Jason TAYLOR; Debbie Pollard; Jean Knight; Tad Humble; Lucy Ricketts; Wallace "Wally" Nay; Joe Davenport; and Faith Brush, in their official capacities as members of the City Council of the City of LaGrange, Appellants,

v.

Elsie CARTER, in her official capacity as Mayor of the City of Lagrange, Appellee.

No. 2009–CA–002004–MR.

Court of Appeals of Kentucky.

Oct. 15, 2010.

Cases Ordered Published by Court of Appeals Dec. 17, 2010.

C. Thomas Hectus, James M. Burd, Louisville, KY, for Appellants.

Oliver H. Barber, Jr., Louisville, KY, for Appellee.

Before CAPERTON and WINE, Judges; LAMBERT,[1] Senior Judge.

## OPINION

CAPERTON, Judge:

The Appellants, hereinafter referred to as the "City Council of LaGrange," appeal the June 22, 2009, order of the Oldham Circuit Court sustaining the motion for judgment filed by the Appellee, Mayor Elsie Carter, with respect to the appointment of Graham Whatley as City Attorney, and sustaining the Mayor's motion to void a tax reduction implemented by the Council, as well as the September 28, 2009 order denying the Council's motion to alter, amend or vacate. Having reviewed the record, the arguments of the parties, and the applicable law, we affirm in part, reverse in part and remand.

Carter initiated the proceedings below by filing a Petition for Declaration of Rights in the Oldham Circuit Court on

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

December 4, 2008. Carter brought claims against the City Council of LaGrange, asserting that the Council had acted contrary to law in the following ways: (1) by approving Hon. Graham Whatley as the City Attorney for LaGrange on September 2, 2008, and subsequently voting to rescind their approval of Whatley on October 6, 2008; (2) by reducing the property tax rate during the tax year from $0.22 to $0.20, which created a deficit or shortfall in the approved budget for the City of LaGrange for the fiscal year 2008–2009 in violation of KRS 91A.030(8); and (3) by nominating, appointing, and approving its own candidate to serve on the City Ethics Committee, contrary to the provisions of KRS 83A.080, which indicate that all non-elected city officers shall be appointed by the mayor with the approval of the city council.[2]

Concerning the appointment of Hon. Graham Whatley, the Council states that it argued below that the Mayor's nomination of Whatley violated LaGrange City Ordinance 8–2006, which required the Mayor to provide the name of the nominee ten (10) days prior to a meeting of the City Council.[3] Further, the Council states that it only conditionally approved Whatley's appointment, subject to his withdrawal as counsel of record in *Woolum v. Winters*, Oldham Circuit Court, No. 06–CI–00585,

because several Council members had concerns that Whatley was counsel to a client suing the Oldham County Property Valuation Administrator (PVA). The Council states that on October 6, 2008, Whatley advised the Council that he was "now out of that case," although upon further inquiry it appeared that Whatley was still counsel of record and was awaiting final adjudication of the case.[4] Thereafter, at the October meeting it was brought to the attention of the Council that Whatley was renting a house owned by the Mayor and, further, that neither the Mayor nor Whatley had advised the Council of Whatley's arrest and then-pending DUI charges in Oldham County. Thus, the Council asserts that because Whatley had never been officially approved as City Attorney, and specifically because the conditions contingent to appointment were not met, a motion was made to rescind the previous approval of Whatley as City Attorney.

In response to the issue concerning the property tax rate, the City Council argued that, other than the Mayor's assertion that the reduction of the property tax rate resulted in a deficit, there was no factual support for that contention, and there was, in fact no deficit.[5] To the contrary, the Council argues that it has demonstrated that because the City received unbudgeted donations of over $200,000, coupled with

**2.** This third issue, concerning the appointment of Mary Ann Smith to serve on the City Ethics Commission, was upheld in favor of the Council by the trial court, and is not being pursued on appeal.

**3.** Although the record does not establish that Whatley's name was provided to the Council at least ten days prior to the September 2, 2008 meeting, the trial court found that the Council failed to object at the September 2, 2008 meeting, and thus, waived the requirement.

**4.** Apparently, Whatley was officially withdrawn as counsel of record by order of the

court on November 3, 2008. This apparently occurred after Whatley failed to appear for his October 15, 2008 court date, and a "failure to appear" was issued, to which Whatley ultimately pled guilty.

**5.** Indeed, the Council asserts that during the course of the September 2, 2008 City Council meeting, the Mayor first suggested reducing the City's property tax rate from $0.22 to $0.215, and that after discussion, motions were made to decrease the rate to $0.17 and $0.19, which the Council rejected. Ultimately, the Council approved a reduction to $0.20.

the fact that the City no longer had to fund the fire department, the decrease in tax rate did not result in a budget deficit. The Council states that there was in fact a budget surplus.

In June 2009, the trial court granted the Mayor's motion for judgment on the pleadings and denied the Council's cross-motion.[6] In so doing, the trial court granted the Mayor's motion for judgment on the pleadings regarding the appointment of Whatley as City Attorney and found that the tax rate reduction created an impermissible and unlawful budget deficit. It also denied the Mayor relief concerning the appointment of Mary Ann Smith to the Ethics Commission. After the trial court issued its order, the City Council filed a motion to alter, amend, or vacate, in which it asserted that Hon. Karen Conrad, the Oldham Circuit Court Judge hearing this matter, should have recused herself from deciding any matters involving the appointment of Graham Whatley to serve as the City Attorney for LaGrange.

The basis of that motion was that during the course of the hearing on the motions for summary judgment, the trial court made a statement indicating that it felt "constrained" and may have been at fault for not allowing Whatley to withdraw from the case against the Oldham County PVA, instead "holding his feet to the fire." Thus, the Council argued that the trial court's statements indicated an implicit acceptance of some blame for Whatley's failure to meet the condition precedent to the Council's approval of Whatley's nomination by the Mayor. Accordingly, the Council asserted that the trial court had been unable to remain impartial with regard to the

ultimate determination concerning Whatley and should have recused itself. The trial court denied the Council's motion to alter amend, or vacate and that issue is now before this Court on appeal.

As its first basis for appeal, the Council argues that the trial court erred in finding that there was a 2008–2009 budget shortfall, in violation of KRS 91A.030(10) and Section 157b of the Kentucky Constitution. In support of that argument, the Council makes four contentions: (1) that the statutes and constitution do not require that the budget be "in balance" at the time of the modification; (2) that the trial court's own opinion offers no factual support for the contention that there was a deficit; (3) that the remedy of the trial court (i.e. declaring the budget amendment null and void) was excessive; and (4) that the Mayor should be estopped from any complaint since the Mayor herself made a motion at the same Council meeting to amend the property tax rate downwards. We briefly explain these arguments in turn.

As its first basis for arguing that the trial court erred concerning its finding of a budget shortfall, the Council contends that neither KRS 91A.030(10) nor § 157b of the Kentucky Constitution require that the budget be "in balance" at the time of modification. In finding as it did, the court found that at the time the City Council acted, revenues were decreased by $104,291.02 and that expenditures were not amended simultaneously, causing an imbalanced budget. The Council argues that the law does not require that expenditures be reduced "at the same time" the budget is modified and, in fact, asserts that KRS 91A.030(8) and (10),[7] when read in conjunc-

---

6. As noted, the trial court did rule that Mary Ann Smith's continued appointment to serve on the City's Ethics Commission was valid, and that portion of the ruling has not been appealed.

7. KRS 91A.030(8) and (10) provide that:

(8a) The legislative body shall adopt a budget ordinance making appropriations for the fiscal year in such sums as the legislative body finds sufficient and proper, whether greater or less than the sums recommended in the budget proposal. The budget ordinance may be in any form that the legislative body finds

tion with § 157b[8] of the Kentucky Constitution, support a contrary position. The Council essentially argues that these provisions do not require that the budget be in balance at the time of modification, but simply that during the course of the fiscal year as a whole, the expenditures not exceed revenues.

Beyond its arguments concerning the statutes themselves, the Council contends that there was in fact no actual deficit, and that the trial court's opinion offered no factual support for that conclusion. A review of the trial court's June 23, 2009 order reveals that the tax reduction at issue was codified in City Ordinance 10–2008, which shows the effective date of the decrease as January 1, 2008, with all taxes due and payable on September 20, 2008. The court further found that the budget for the fiscal year beginning July 1, 2008 (as approved by an ordinance on July 7, 2008) was based on a tax rate of $.22 cents per $100.00 value of real property, with taxes due and payable by September 20, 2008. Accordingly, the court found that the result of the tax reduction was to reduce revenues to be used for appropria-

tions set forth in the budget ordinance of July 7, 2008, thereby constituting an amendment to the July 7, budget, as approved on July 7, 2008. The court ultimately found that the reduction in tax revenue for the fiscal year beginning July 1, 2008, due to Ordinance 10–2008 amounted to $104,292.02.[9]

Below, the Council argued that the City would realize additional revenues consisting of "new growth" taxation valued at $47,301,300.00, with additional revenues of $94,602.60 at the $.20 cents tax rate, thereby limiting the reduction in revenues to $9,689.42 when applied against the decrease. The trial court rejected that contention, finding that new growth was not taxed until January 1st of the year following its listing on the tax rolls and, thus, was not taxable as of January 1, 2008. Accordingly, the court found that the new growth calculated by the Council did not qualify as revenue to be counted toward the July 7, 2008 budget.

Further, the trial court addressed donations made to the City in the amount of $200,000 from the Rawlings Foundation,

most efficient in enabling it to make the necessary fiscal policy decisions.

(8b) No budget ordinance shall be adopted which provides for appropriations to exceed revenues in any one (1) fiscal year in violation of Section 157 of the Kentucky Constitution. (10) The city legislative body may amend the budget ordinance after the ordinance's adoption, if the amended ordinance continues to satisfy the requirements of this section.

8. Kentucky Constitution § 157(b) provides that:

Prior to each fiscal year, the legislative body of each city, county, and taxing district shall adopt a budget showing total expected revenues and expenditures for the fiscal year. No city, county, or taxing district shall expend any funds in any fiscal year in excess of the revenues for that fiscal year. A city, county, or taxing district may amend its budget for a fiscal year, but the revised expenditures may not exceed the revised revenues. As used in

this section, "revenues" shall mean all income from every source, including unencumbered reserves carried over from the previous fiscal year, and "expenditures" shall mean all funds to be paid out for expenses of the city, county, or taxing district during the fiscal year, including amounts necessary to pay the principal and interest due during the fiscal year on any debt.

9. The court reached this calculation by using a taxable real estate valuation of $568,761,400.00, less new growth of $46,301,300.00 for taxable real estate valued at $521,460,100.00. The court found that at the valuation rate of $0.22 cents per $100.00, revenues would be $1,147,212.22. At the new rate of $0.20 cents per $100.00, the court found that revenues would be $1,042,920.20, or $104,292.02 less income on real estate. The court found that the taxable rate on personal property did not change according to the recorded proceedings.

which the Council asserted was available to balance the budget and offset the reduction in revenue, while the Mayor argued that the donations were earmarked and could not be used for general funds. In its order, the trial court found that $100,000 was donated by check on December 23, 2008, and was accompanied by a handwritten note from the donor "encouraging" the City to continue its support of the Oldham Reserve. The court found that this was not a specific restricted use, and noted that the check also indicated that it was "support for operations." Nevertheless, the court found that because this money was not received until six months after the budget was passed, it could not be considered "revenue" at the time the budget was approved.

As to the additional $100,000, the court indicated that it was donated in early 2008 and that the court was not provided with any proof as to the status of those funds, nor the restrictions, if any, which applied. Nevertheless, the court found that those funds were not considered as "revenues" when the budget ordinance was adopted in July of 2008, since "revenues" could only be money received during the course of the fiscal year beginning July 1, 2008.

The Council argues that the court came to an erroneous conclusion as to the existence of a deficit because it specifically excluded $100,000.00 in unbudgeted revenues that had been received, specifically, a $100,000.00 donation to the City of La-Grange by the Rawlings Foundation on December 23, 2008. The Council asserts that even assuming a reduction in revenue of $104,292.02 upon reduction of the tax rate, when considering the surplus in the budget of $30,000.00, the "short fall" was actually $74,292.02. The Council asserts that the court should have credited the budget with the $100,000.00 donation made by the Rawlings Foundation on July 1, 2008, rather than finding that the donation

could not apply since it was received after the reduction was approved.

Alternatively, the Council asserts that even if a shortfall did in fact result from the amended tax rate, the remedy ordered by the trial court was inappropriate because the City could have amended the budget, as provided by KRS 91A.030(10). The Council argues that the court's remedy of declaring the decrease null and void will create many bookkeeping problems, since tax bills have already been mailed, and the entire tax billing cycle must be redone. The Council asserts that if a "shortfall" did in fact exist, the appropriate remedy would have been to uphold the decrease but remand to the City Council for adoption of a balanced budget for the 2008–09 fiscal year.

■ As noted, the Council's fourth argument concerning the alleged "shortfall" was that the Mayor should be estopped from any complaint since the Mayor herself made a motion at the same Council meeting to amend the property tax rate downwards. The Council does not elaborate upon this argument further in its brief. We nevertheless note that according to the findings of the trial court, Mayor Carter first introduced the proposal to cut taxes from $0.22 cents per $100.00 to $0.215 cents per $100.00, stating that there was a surplus of approximately $30,000.00 in the budget as a result of some changes concerning the LaGrange Fire Department. Thus, Mayor Carter asserted that her proposed tax reduction would result in decreased revenues of a similar amount, ultimately having no effect on the overall budget. Accordingly, because Mayor Carter's proposed tax decrease would have been offset at the time of passage by the revenue saved from the change in taxation status of the fire department, we disagree with the Council's arguments that the Mayor is estopped from raising this issue

and do not find that to be a pertinent argument in the matter *sub judice.*

In response to the arguments made by the Council, the Mayor argues that the Council's vote to decrease the tax rate caused the budget to be $90,000.00 out of balance, which was compounded by various other subsequent events, including interest on certain revenue bonds which the City became obligated to pay on a defaulted business park project. Thus, the Mayor states that she has been required to reduce expenditures in several areas and make numerous budget adjustments to balance the budget. She disputes the Council's assertion that the budget was nevertheless balanced, stating that none of the money donated by the Rawlings Foundation could be used for the general City fund. Further, she asserts that any new growth which occurred in LaGrange is not taxed until the subsequent year. Thus, she ultimately argues that the Council's action in reducing the property tax rate and creating a budget deficit were contrary to and in violation of KRS 91A.030 and Kentucky Constitution § 157(b).

■ At the outset, we note that this issue is one which depends upon statutory interpretation. Accordingly, the construction and interpretation of our review is *de novo. Lexington–Fayette Urban County Health v. Lloyd,* 115 S.W.3d 343, 347 (Ky. App.2003). Having so stated, we are in agreement with the trial court that Ordinance 10–2008 reduced the revenues available for the fiscal year beginning July 1, 2008, to a level where revenues were not adequate to meet expenditures. This Court finds KRS 91A.030(8) to be clear that no budget ordinance shall be adopted which provides for appropriations to exceed revenues in any one fiscal year in violation of Section 157 of the Kentucky Constitution. That provision provides that the legislative body of a city shall adopt a budget showing *total* expected revenues and expenditures for the fiscal year. Likewise, we believe that KRS 91A.030(10) is equally clear that any amendments made to the original ordinance must continue to satisfy the same requirement of balance between revenue and expenditures.

■ In reviewing the arguments of the parties, we note that both sides seem to make much of the amounts of money which were received, or expenditures made or expected after the amendment was passed, which either offset or contribute to, the reduction in revenues caused by the tax decrease. Ultimately, however, we find these arguments to be superfluous to the primary determination. Certainly, at the time that a budget or an amendment to a budget is passed, it need not be literally "in balance" as of the date of passage. That is to say that the city is certainly not expected to have, at the moment of passage, revenues adequate to meet all anticipated expenditures.

What is essential, however, according to the statutory authority of our Commonwealth is that at the time of passage, the budget be "in balance" insofar as anticipated expenditures not exceed anticipated revenues. In the matter *sub judice,* at the time the Council passed the tax decrease, it caused anticipated revenues to be less than anticipated expenditures. While it may be true that the City ultimately received donations which served to offset the reduction in revenue, this was not a fact known by the Council at the time the ordinance was passed. Accordingly, we believe the ordinance to have been in violation of the applicable statutory authority and we affirm the holding of the trial court on this issue.

■ Having addressed the issues concerning the city budget, we now turn to the arguments of the parties concerning the appointment of Hon. Graham Whatley

to the Council. As its second basis for appeal, the Council argues that the vote to approve the appointment of Whatley was subject to a condition subsequent, which was never met prior to official appointment [10]. Thus, the Council asserts that it had the authority to rescind Whatley's conditional appointment, both because he did not meet the condition subsequent and because the Council learned of Whatley's rental of a house owned by the Mayor and pending DUI charge in Oldham County.[11] The Council asserts that Whatley's appointment was revocable until the last act required for approval had been accomplished, and since the last act was not accomplished, then the acts of Council prefatory to appointment could be rescinded. The Council further asserts that neither Whatley nor the Mayor had any claim for estoppel or detrimental reliance because none of the parties involved materially changed their position in reliance upon Whatley's pending appointment.

In response, the Mayor asserts that Whatley's appointment as City Attorney was proper. She stipulates that the nomination put forth by Councilwoman Lucy Ricketts contained the proviso that the appointment of Whatley to the position of City Attorney would not become effective until there had been an official withdrawal by Whatley from his position as counsel in the matter of *Woolum v. Winters.* Nevertheless, the Mayor asserts that in rescinding its appointment of Whatley, the Council was usurping the executive authority and responsibility of the Mayor, contrary to the constitutional and statutory provisions of our Commonwealth. With respect to Whatley's DUI and purchase of the Mayor's property, the Mayor asserts that these arguments are "specious," are unrelated to his ability to serve as City Attorney, and do not warrant further consideration by this Court.

■ As this issue is also one which depends upon interpretation and construction of statutes, we again conduct a *de novo* review. *See Lloyd, supra* at 347. In doing so, we note that KRS 83A.080(3) provides, in pertinent part, as follows:

(3) All nonelected city officers shall be appointed by the executive authority of the city, and except in cities of the first class, all of these appointments shall be with approval of the city legislative body if separate from the executive authority.

Further, we acknowledge, as the Mayor points out, that KRS 83A.130(8) unambiguously categorizes the making of a contract as an executive function. Indeed, it is the mayor who has the power to hire and fire city employees. *See Williams v. London Utility Commission,* 375 F.3d 424, 428 (6th Cir.2004). The Mayor relies upon this authority to assert that it was only she who had the power to dismiss Whatley from the City Attorney position. While we agree with the Mayor, we find her position to be irrelevant in the matter *sub judice.*

Had Whatley actually been appointed, the authority to terminate his contract would lie solely with the Mayor. However, it is clear to this Court upon review of the record the Council's approval of Whatley's appointment was conditional from the outset. The Council expressed clear and valid

10. While we understand the Council's concern over these two issues, we do not consider them pertinent to the merits of the appeal. The specific condition Whatley was required to meet was withdrawal from the *Woolums* case. While his subsequent activities may have added additional fuel to the fire, they are not determinative of this issue on appeal.

11. Therein, the Supreme Court held that South East Coal's motion for the recusal of a special justice was untimely when the motion was not filed until after oral argument and the issuance of an opinion some ten months later.

concerns about Whatley's withdrawal from the pending action against the Oldham County PVA and made it equally clear that his approval was conditioned upon same.

■ Without question, it has long been held that an appointment is revocable until the last act required of the appointing authority has been accomplished. *See Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), and *Board of Education of Boyle County v. McChesney,* 235 Ky. 692, 32 S.W.2d 26 (Ky.App.1930). We believe that in this instance, the Council made it very clear that Whatley's appointment was conditional and unofficial, indeed stating specifically at the September 2nd meeting that Whatley's appointment "did not become official until he has withdrawn from the case with Oldham County."

In this instance, at the time the Council voted to rescind Whatley's appointment, he had not completed the act upon which his appointment was conditioned. Accordingly, we believe the Council acted well within its authority to rescind that appointment. While the court below was correct that only the Mayor may dismiss a city employee, Whatley was not officially a city employee. Thus, it remained within the power of the Council to rescind their approval at any time prior to his official appointment. Accordingly, we are compelled to reverse the order of the trial court on this issue.

■ As its third and final basis for appeal, the Council argues that the trial court stated concerns regarding the appointment of Graham Whatley should have required the court to *sua sponte* disqualify itself. In support thereof, the Council argues that the court's own statements reflected its inability to remain impartial with respect to its ultimate determination concerning Whatley namely, whether Whatley had in fact met the conditions precedent required by the Council and whether the Council could rescind its approval prior to those conditions being met. In reliance upon KRS 26A.015(2)(e), the Council argues that the court's admission of "fault" called into question its impartiality and that even if it was in fact impartial, even the appearance of impartiality is enough to require disqualification. The Council also directs this Court to *Sommers v. Commonwealth,* 843 S.W.2d 879 (Ky. 1992), in which our Kentucky Supreme Court found recusal to be appropriate where the judge's ruling in past litigation was one factor which led to the proceedings from which recusal was sought.

In response, Mayor Carter argues that the Council's arguments for recusal are based neither in law nor fact. First, Carter asserts that the Council's arguments for recusal were belatedly offered in the motion to alter, amend, or vacate, and that they took no timely action at the March 20, 2009 hearing to object to the judge's presiding over the case or to suggest that she recuse herself. Further, Carter asserts that the judge's comments concerning Whatley's withdrawal as counsel in the *Woolum* case were only a factual history of the events leading up to the matter at hand, and that the Council has not made a showing of bias or prejudice sufficient to warrant recusal.

■ In reviewing this issue, we note that the standard for determining whether a motion to recuse is legally sufficient is whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial. *Dean v. Bondurant,* 193 S.W.3d 744 (Ky.2006). In the matter *sub judice,* we are in agreement with Mayor Carter that the Council's arguments on this issue are untimely. Clearly, the attorneys representing the Council were present at the March 20, 2009 hearing, as was at least one of the Council members. Certainly, it is well-established law of this Commonwealth that

recusal is waived if not asserted at the first instance a party learns of the grounds for recusal. *See Bussell v. Commonwealth*, 882 S.W.2d 111, 112 (Ky.1994). In the matter *sub judice*, the Council did not object to Judge Conrad's continuing to preside over the case at the time she made the statements at issue, or indeed at any time for the remainder of the trial. This issue was only raised belatedly in the Kentucky Rules of Civil Procedure (CR) 60.02 motion following the issuance of the court's decision in this matter. *See, e.g., Kentucky Utilities Co. v. South East Coal Co.*, 836 S.W.2d 407 (Ky.1992).[12]

 Concerning the Council's arguments that the court should have *sua sponte* recused, we note that the grounds upon which a court must *sua sponte* recuse are clearly set forth in KRS 26A.015. Because we do not believe that the comments allegedly made by the trial court fit within the parameters of this provision, we do not believe *sua sponte* recusal to be a viable argument on appeal. Furthermore, even if this Court were inclined to find the comments allegedly made by the trial court to be objectionable, we note that the parties did not include the videotape which contained these alleged comments in the record. As we have previously held regarding all disputed issues of fact, this Court is to assume that all undesignated parts of the record support the judgment of the lower court. *See Hamblin v. Johnson*, 254 S.W.2d 76 (Ky.1953). Accordingly, we decline to reverse on this basis.

Wherefore, for the foregoing reasons, we hereby affirm the portion of the June 22, 2009 order entered by the Oldham Circuit Court sustaining the Mayor's motion to void a tax reduction implemented by the Council, reverse the portion of the order concerning the Council's decision to rescind its approval of Whatley for City Attorney, and remand for any additional proceedings not inconsistent with this opinion.

LAMBERT, Senior Judge, Concurs.

WINE, Judge, Concurs in Result Only.

---

**12.** Therein, the Supreme Court held that South East Coal's motion for the recusal of a special justice was untimely when the motion was not filed after oral argument and the issuance of an opinion some ten months later.