### In re CHAPMAN et al.

District Court, W. D. Kentucky.

Feb. 26, 1931.

F. M. Drake, Jno. K. Skaggs, and Gordon, Laurent & Ogden, all of Louisville, Ky., for insurance companies.

Woodward, Hamilton & Hobson, of Louisville, Ky., for bankrupts.

DAWSON, District Judge.

In this proceeding seven fire insurance companies are seeking an order of this court directing the bankrupts, who for many years have conducted a general fire insurance agency business in the city of Louisville, to turn over to the respective companies all their office copies of the so-called daily reports of the policies issued by the respective companies through said bankrupts as agents. This demand is made on the theory that these daily reports were required to be kept by the agent, for the reason that they were absolutely essential to the conduct of the business of the claimant company, and that, being a record absolutely essential to the proper conduct of the principal's business, such daily reports were at all times, and now are, the property of the companies issuing the policies covered by the reports. It appears from the evidence that it is the universal practice in the fire insurance agency business for the agent, at the time the policy is written, to attach one of these reports to the policy, mail one to the company issuing the policy, and retain one in his own office.

The proof heard on this motion wholly fails to establish any specific agreement between the insurance companies and the bankrupts that the copies kept by the bankrupts in their office shall be considered the property of the companies issuing the policies covered by the reports. Neither is there any satisfactory proof of any such universal practice or custom in the insurance business as to warrant me in holding that, when the relationship of principal and agent was established between the insurance companies involved here and the bankrupts, it was an implied part of the contract that the copies of the daily reports retained by the agent were the property of the insurance companies.

The companies rely on several authorities which hold, or tend to hold, that these reports

are the property of the insurance companies issuing the policies covered by same, and that, when the agent for any cause severs his connection with the company, the company is entitled to possession of the agent's copies of the daily reports. These authorities, however, and the reasoning upon which they are based, do not seem to me to be at all persuasive. They nearly all have proceeded upon the theory that the information embraced in these reports is in the nature of confidential information or trade secrets. Some of these cases not only adjudge that the insurance company is entitled to possession of these reports, but that the former agent can be enjoined from using copies of them for the purpose of competing with his former principal, or for the purpose of injuring in any way the business of his former principal. Other authorities upon the theory that the information is confidential have even gone to the extent of enjoining a former agent from in any way soliciting the customers with whom he dealt in behalf of his former principal. Most of these authorities, however, while holding that the agent can be enjoined from the use of such a record itself, or copies thereof, for the purpose of competing with his former principal, have declined to enjoin the agent from using such information about the business of his former principal as he could retain in his memory. The courts were driven to this latter conclusion largely because of the impracticability of enjoining a person from the use of his memory. However, if the premise of these cases, to the effect that the information is confidential, is sound, a court of equity, it seems to me, would have the power to effectively control even the memory of the former agent by enjoining him from in any way soliciting the business of the customers of his former principal with whom he dealt while representing said principal.

I am persuaded, however, that the information obtained by a general insurance agent, while representing an insurance company, of the character contained in the so-called daily reports, cannot possibly be classed as confidential information. It has been developed in this case—and it is a matter of common knowledge—that a general fire insurance agent, in soliciting fire insurance business, makes such solicitation, not in behalf of any particular company, but in reality in behalf of the agency, and, after the business has been secured, the agent then allots the business to such one of the companies represented by him as he may determine.

The name of the insured, the character and description of the property to be insured, the amount of the insurance, and the character of the policy, are all information gathered by the agent at his own expense and before the insurance company to which the business is subsequently allotted ever comes into the picture. It is true that, as a matter of legal fiction as between the company to whom the policy is allotted and the insured, the agent, within the scope of his authority, is deemed to represent the company with whom the policy is ultimately placed; but, as between the agent and the insurance company, this cannot very well be said to be true—certainly not to the extent of enabling a court to hold that the information thus obtained is the private and exclusive property of the insurance company with whom the policy is ultimately written.

Therefore it seems to me that we must determine the relative rights of the company and of the agent to the agent's office copies of the daily reports upon a broad survey of all the facts relating to the conduct of a fire insurance agency business, rather than by an application of the principles of law which apply to those cases where the records involved are records made for and kept, actually or constructively, in the possession of the principal, and based upon facts and information gathered at the principal's expense. Having in mind the distinctive manner in which the fire insurance agency business is conducted, it is readily apparent that no such agency could conduct its business in a safe or systematic way, unless it kept for its own use records containing the very information embodied in the so-called daily reports. Indeed, such information always at hand is absolutely essential to the business of such an agency. If such an agent knew that these records were the property of the company, with the right in the company to take them out of his possession whenever it so desired, he would certainly keep a duplicate of that information as his own property, and the very fact that such is not done is one of the strongest arguments in support of the contention of the agents that their office copies of the daily reports are their own property, kept for their own business purposes. The fact that the insurance companies are in the habit, either directly or through a distributing printer, of furnishing to their agents blank forms of the daily reports of itself, affords no support to the claim of the companies that the agent's copy of this report, when filled out from information

gathered by the agent at his own expense, becomes the property of the company. It is but natural that fire insurance companies, in their desire to secure satisfactory agents, strive to make agency connection with them attractive. Furnishing agents blank forms, by which a record of their business may be conveniently kept, is one way by which insurance companies can make connection with them attractive to agents, and I think under all the evidence in this case it is fair to say that the copy furnished for the agent's file is furnished primarily to serve the agent's convenience, and not to meet the business necessity of the company.

Some suggestion has been thrown out in this case that a different rule should obtain in those cases where the agency relationship is terminated while the agent is in arrears to his principal than is otherwise applicable, but there is no evidence in this case that there was any specific agreement between the companies involved here and the bankrupts that their office copies of the daily reports would become the property of the insurance companies if they should sever their connection with the companies while in arrears to them; nor is there any satisfactory proof of any such universal custom in the trade. Therefore the rights of the parties must be determined by a determination of the ownership of these agents' copies of the daily reports at the time they were made and placed in the agent's files. If they were the agent's property, then I know of no rule of law which would automatically transform them into company property upon the agent quitting the company's service while in arrears to it.

In view of what I have said, I feel constrained to hold that the records sought to be recovered here are the property of the bankrupts, and the motion of the claimants must therefore be denied.