**SOUTHERN FINANCIAL LIFE INSURANCE COMPANY,**
Appellant

v.

**Honorable Steven D. COMBS, Judge, Pike Circuit Court, Appellee**

and

**Roger Mullins, Administrator of The Estate of Valerie Mullins, on Behalf of Himself and All Others Similarly Situated, Real Party in Interest.**

No. 2012–SC–000642–MR.

Supreme Court of Kentucky.

Nov. 21, 2013.

Joseph L. Hamilton, Marjorie Ann Farris, Chadwick Aaron McTighe, Stites & Harbison, PLLC, Jason Charles Kuhlman, Jeffrey C. Mando, Adams, Stepner, Wolterman & Dusing, PLLC, Russell H. Davis, Jr., Baird & Baird, PSC, for Appellant.

Steven Daniel Combs, pro se.

Herman Michael Lucas, Miller Kent Carter & Michael Lucas, PLLC, Kathleen Clark Knight, Richard Eric Circeo, Wilkes & McHugh, PA, for Real Party in Interest.

Opinion of the Court by Chief Justice MINTON.

Southern Financial Life Insurance Company sells credit life and disability insurance through lending institutions, mostly banks and car dealerships. In a class action brought against Southern Financial by purchasers of its credit life and disability policies in Kentucky, the trial court entered a discovery order compelling Southern Financial to produce certain loan information and documents regarding the putative class members and the insurance sold to them. Southern Financial objected to the discovery, arguing that the requested loan information and documents were not in its "possession, custody or control" within the meaning of Kentucky Rules of Civil Procedure (CR) 34.01. The requested information, according to Southern Financial, is in the hands of nonparties, the lenders. Applying principles of general agency law, the trial court overruled the objection.

Southern Financial now seeks a writ of prohibition to prevent the trial court's enforcement of that discovery order. The Court of Appeals, where this writ action originated, declined to issue a writ; and Southern Financial appeals to this Court as a matter of right.[1]

---

1. CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); *see also* Ky. Const. § 115 ("In all cases, civil and

Southern Financial contends that the Court of Appeals erred in declining to issue a writ based on its finding that an adequate remedy, outside the issuance of a writ, existed on appeal. We now affirm the denial of the writ but for different reasons. Based on our analysis of general agency law and its interplay with CR 34.01, we conclude that no writ should issue because the trial court has committed no error.

## I. FACTUAL AND PROCEDURAL HISTORY.

Southern Financial is an insurer that sells disability and life insurance to help borrowers make loan payments in the event that the insured borrower becomes disabled or dies before the loan is paid off. In issuing these policies, Southern Financial did not directly solicit the insureds. Instead, the lending institutions offered Southern Financial's product with a lump-sum premium that was often included in the amount loaned to the borrower.

The underlying action from which this writ is being sought was filed by Roger Mullins as executor of his wife's estate. The suit alleges that Southern Financial did not properly pay disability benefits that his late wife was entitled to under the terms of her Southern Financial disability policies.[2] Alleging that this underpayment of benefits was the result of a pattern of practice applicable to each policy issued by Southern Financial, Mullins's claims were certified as a class action.[3]

In furtherance of his claims against Southern Financial, Mullins, on behalf of the class, propounded written discovery upon Southern Financial seeking, as is relevant here, information regarding all of the loans that were insured by Southern Financial's product. The discovery request that is at the core of the instant controversy is interrogatory number two in Plaintiff's First Set of Merits Interrogatories to Defendant.[4] The discovery sought includes information, such as the date of initiation of the insured loans, date of termination or satisfaction of the insured loans, reason for the termination of the insured loans, the interest rates of the insured loans, and the amount of the monthly payments under the insured loans, among other information generally pertaining to the interplay between the underlying loans and the insurance provided by Southern Financial.

Southern Financial objected to the disclosure of the requested discovery, arguing that the loan information was not in its "possession, custody or control" within the meaning of CR 34.01. Instead, Southern Financial argued that the sought-after discovery materials were in the possession of the individual lenders. The trial court overruled Southern Financial's objections and entered an order, dated March 17, 2011, compelling Southern Financial's responses to Plaintiff's First Set of Merits Interrogatories. In doing so, the trial court noted that the lenders were agents

criminal, there shall be allowed as a matter of right at least one appeal to another court.").

2.  There is some confusion regarding whether claims pertaining to the life insurance policies issued by Southern Financial are a part of the suit. This distinction is irrelevant for our purposes because it does not change our analysis.

3.  The class consists of all citizens and residents of Kentucky who purchased insurance from Southern Financial using forms DG–1003–KY, S–3454–KY, S–3461–KY, and CR–3455(SFIC)-KY between 1997 and 2007.

4.  We note that Southern Financial takes issue with nearly all of the requests propounded by Mullins; but his argument seems to focus on this specific interrogatory, so we will do the same.

of Southern Financial and that the requests were not unduly burdensome.

Following the trial court's order to compel discovery, Southern Financial did not obtain and disclose the information mandated by the order. As a result, Mullins moved the trial court to sanction Southern Financial for its failure to comply with the court's discovery order. In response to Mullins's motion, by order entered May 23, 2012, the trial court ordered that "in lieu of monetary or other sanctions," Southern Financial was to subpoena the records falling within the purview of the 2011 order or reimburse the class's expense in doing so itself.

Taking issue with the trial court's May 23, 2012, order, Southern Financial proceeded before the Court of Appeals on two separate but interrelated fronts. The first action was a direct appeal taking the position that the 2012 order was a contempt sanction and, thus, immediately appealable. The second action was the petition for a writ of prohibition.

In the writ proceeding, the Court of Appeals denied Southern Financial's petition, finding that the direct appeal then pending before it provided an avenue of relief sufficient to negate the availability of a writ. This appeal followed the denial. We affirm the denial of the writ by the Court of Appeals, although on different grounds.[5]

## II. ANALYSIS.

■ The issuance of a writ of prohibition is an extraordinary remedy.[6] In fact, courts are decidedly loath to grant writs as a "specter of injustice always hovers over writ proceedings."[7] This specter is ever present because writ cases "necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants."[8] Stemming from this reluctant approach to writ proceedings, this Court has consistently applied a strict standard for determining the availability of relief by way of a writ.[9]

■ Writ cases are "divided into two classes, which are distinguished by whether the lower court allegedly is (1) acting without jurisdiction (which includes 'beyond its jurisdiction'), or (2) acting erroneously within its jurisdiction."[10] Because Southern Financial does not challenge the trial court's jurisdiction to issue either the

---

5. *See McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n. 19 (Ky.2009) ("[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record."). We also acknowledge and grant Southern Financial's motion requesting that this Court take notice of the dismissal of the related direct appeal by the Court of Appeals. While we find it somewhat puzzling for the Court of Appeals to cite the existence of the direct appeal as grounds to deny the writ only to dismiss the direct appeal later as interlocutory, the pendency, or lack thereof, of the related direct appeal is irrelevant to our analysis and holding because we affirm on different grounds.

6. *See, e.g., Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961).

7. *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008).

8. *Interactive Media Entm't and Gaming Ass'n v. Wingate*, 320 S.W.3d 692, 695 (Ky.2010) (quoting *Cox*, 266 S.W.3d at 795) (internal quotation marks omitted).

9. *See Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004) (holding that the older, stricter standard applied in *Bender*, 343 S.W.2d at 800, and *Chamblee v. Rose*, 249 S.W.2d 775 (Ky. 1952), should govern writ proceedings).

10. *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky.2005) (quoting *Bender*, 343 S.W.2d at 800) (internal quotation marks omitted).

2011 or 2012 order, we are not now concerned with the first class of cases.

When a writ is being sought under the second class of cases, a writ *"may be granted upon a showing ... that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted."* [11] There is, however, a narrow exception to the irreparable harm requirement. Under this exception, "certain special cases" will allow a writ to be issued "in the absence of a showing of specific great and irreparable injury ... provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." [12] It is important to note that the granting of a writ is an inherently discretionary decision; and even if all the requirements for the issuance of a writ are met, it is still within the discretion of the court to deny the issuance of the writ. [13]

Because of the discretion intrinsic to the issuance of a writ, the decision of the Court of Appeals is typically reviewed for an abuse of discretion. [14] "But when the issue presented involves a question of law, we review the question of law de novo." [15] If the findings of fact of the Court of Appeals are in question, then this Court reviews for clear error. [16] Since the only determination made by the Court of Appeals was regarding the availability of an adequate remedy outside of a writ, a question of law, we review the entire proceeding de novo. [17] Yet, it is well settled that we are not bound by the analysis of the Court of Appeals and may affirm on any grounds supported by the record. [18]

Southern Financial argues the necessity of a writ under both the irreparable harm and manifest injustice pathways. In arguing for the issuance of a writ in these circumstances, Southern Financial contends that it has no alternative remedy on appeal from the 2012 discovery order and that the enforcement of the order would cause Southern Financial irreparable harm, as well as result in a substantial miscarriage of justice. More specifically, Southern' Financial argues that there is typically no adequate remedy from orders allowing discovery, [19] that the potential

---

11. *Hoskins*, 150 S.W.3d at 10.

12. *Bender*, 343 S.W.2d at 801.

13. *Edwards v. Hickman*, 237 S.W.3d 183, 189 (Ky.2007).

14. *Newell Enterprises, Inc.*, 158 S.W.3d at 754.

15. *Id.*

16. *Id.* at 755.

17. *Id.* ("[T]he existence of a remedy by appeal, adequate or not, is a question of law....")

18. *See, e.g., McCloud*, 286 S.W.3d at 786 n. 19.

19. Southern Financial relies on our case law in arguing that "there will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery," *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004), because "[o]nce the information is furnished it cannot be recalled." *Bender*, 343 S.W.2d at 801. While we cannot dispute that the bell of discovery disclosures cannot be unrung, this line of precedent does not appear to be immediately applicable in this instance. This is not a case in which the discovery order being attacked requires the disclosure of expert work product, *see id.* at 802, or trade secrets, *Wal–Mart Stores, Inc. v. Dickinson*, 29 S.W.3d 796, 800 (Ky.2000), that the party seeking discovery is not entitled to; but, instead, Southern Financial takes issue more with *how* the information is discovered as opposed to *whether* it is discovered. In short,

damage to its business relations with the lenders as a result of serving and enforcing subpoenas would cause irreparable harm, and that requiring a party to subpoena information from third parties results in a substantial miscarriage of justice requiring correction. Although these arguments may have merit, we need not reach them because we find it clear that the trial court did not err in issuing the 2011 or 2012 orders.[20]

Southern Financial's assignment of error facially attacks the 2012 order as an impermissible discovery sanction and also presents a veiled attack on the 2011 order. Southern Financial argues that trial court erred in entering the 2012 order as a sanction for failing to comply with the 2011 order because of the inherent inconsistencies between the two orders.

Southern Financial somewhat circularly argues that the trial court's acknowledgement in the 2012 order that subpoenas were necessary to obtain the information from the lenders constitutes a tacit recognition that Southern Financial never was in control of the information it is being compelled to produce. Because the court has implicitly acknowledged that Southern Financial does not "control" the information possessed by the lenders, as the 2011 order held, Southern Financial further argues that complying with the 2011 order was impossible and, therefore, an improper basis for the imposition of sanctions in the 2012 order. In essence, Southern Financial is arguing that because the trial court was incorrect in its finding that Southern Financial was in "possession, custody or control" of the information held by lenders in the 2011 order, the 2012 order is similarly an error because it is a sanction for failing to comply with an erroneous order, compliance with which was impossible.[21] Because Southern Financial focuses on the issue of whether it had "control" of the sought-after information held by the lenders within the purview of CR 34.01, we shall do the same.

For discovery to be had from a party under both Kentucky's Rules of Civil Procedure and their federal analog, a party must be in "possession, custody or control" of the documents or information being sought.[22] A party has control over discoverable information within the mean-

---

Southern Financial appears to be more concerned with the financial and procedural aspects of the discovery of the information sought in interrogatory number two, not the content of the discovery materials; and we are not convinced that existing case law is applicable here.

20. Although our precedent advises undertaking the adequate remedy and irreparable harm prongs of the writ analysis as a "gateway" analysis before discussing error, we find the ends of this position—judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs—is better served in this instance by proceeding directly to the issue of error because, in our opinion, this issue is uncomplicated. *See Bender*, 343 S.W.2d at 801 ("This is a practical and convenient formula for determining, *prior to deciding the issue of alleged error*, if petitioner may avail himself of this remedy.").

21. Although Southern Financial argues that the 2012 order was a sanction of some kind, we find it important to point out that it is clear that it was not intended as such. It is true that the order was in response to Mullins's motion for sanctions, but the order itself explicitly states that it is "in lieu of monetary or other sanctions." But this distinction does not effectuate any change in our analysis because while the 2012 order was not one levying sanctions, it was intended to enforce the 2011 order, so the logic that drives Southern Financial's argument is still pertinent. Specifically, if the 2011 order is erroneous, then the 2012 order enforcing it is similarly improper.

22. CR 34.01(a); *see also* Federal Rules of Civil Procedure (FRCP) 34.

ing of CR 34.01 if the party has a legal right to obtain the documents on demand.[23] In applying this test that circuit courts are very familiar with, the trial court found that because the lenders, who are unquestionably in possession of the documents at issue, were the agents of Southern Financial, Southern Financial exhibited sufficient control over the documents to require it to produce them in discovery.

In challenging this finding, Southern Financial argues that the trial court's agency theory has been "put to the test" and the fact that 141 lenders refused to turn over the requested documents to Southern Financial shows that the trial court's analysis regarding the extent of Southern Financial's control over the documents was incorrect in the 2011 order to compel. While this argument is facially appealing to some degree, ultimately it fails. This argument presents a nonsequitur, a logical fallacy in which the conclusion does not flow from the premise. Here, Southern Financial concludes that it was not in control of the relevant documents because the lenders in possession of the documents refused to turn them over on request. But the lenders' mere rejection of Southern Financial's request does not mandate a conclusion that it was not entitled to obtain those documents, only a conclusion that the lenders are not willing to disclose them.

An agent refusing to turn over information that falls squarely within the scope of agency does not make a principal any less entitled to possession of the sought-after information. Taking Southern Financial's argument to its logical conclusion, any records custodian could refuse to disclose discoverable information to its employer, thereby allowing the employer to escape from making the disclosures mandated by CR 34.01 because the record custodian's denial would definitively show that the principal was not in "possession, custody or control" of the records sought. This is surely an absurd result that was not intended under CR 34.01. An agent's response does not define the parties' relationship or set the parameters of "possession, custody or control."

The persuasiveness of Southern Financial's argument is further undercut by its internal inconsistencies. Southern Financial contends that the refusal of 141 out of "almost 300" lenders to disclose the requested information is conclusive proof that Southern Financial did not have CR 34.01 control of the documents. This position, however, neglects to account for the nearly 160 other lenders that *did* voluntarily comply with Southern Financial's request for information. While we do not take the position that this conclusively proves Southern Financial's control of the information, we cannot help but acknowledge the damage done to the argument's persuasiveness.

▆▆▆▆ We begin our analysis by turning to a brief analysis of agency law. As noted by the trial court, Kentucky law operates to create a mandatory principal-agent relationship between any party that solicits and receives applications for insurance and the company for which they solicit, an agreement to the contrary notwithstanding.[24] The lenders here fall squarely within this agency relationship and are the agents of Southern Financial as a matter of law. As such, general principles of agency law dictate the relationship between the principal and agent.

Enumerated as some of the most basic and well-settled principles of agency law

**23.** *Metro. Prop. & Cas. Ins. Co. v. Overstreet,* 103 S.W.3d 31, 44–45 (Ky.2003).

**24.** *Pan–American Life Ins. Co. v. Roethke,* 30 S.W.3d 128, 131 (Ky.2000).

are the duties owed by agents to principals; and, among these duties, two are particularly relevant to determining if a principal has "control" over information in the possession of its agents. The first is an agent's duty to disclose information to his principal. The Restatement (Third) of Agency states that "[a]n agent has a duty to use reasonable effort to provide the principal with facts that the agent knows[.]"[25] This duty is triggered by "any manifestation by the principal" so long as the information can be provided without violating a superior duty to another party.[26] Secondly, agents are also under a duty to comply with the reasonable, lawful instructions of their principals. Again, the Restatement (Third) of Agency explains that an agent "has a duty to comply with all lawful instructions received from the principal ... concerning the agent's actions on behalf of the principal."[27]

When contemplating these undisputed tenets of agency law in light of CR 34.01's definition of *control*, it becomes clear that a principal has a legal right to obtain any information in the possession of his agent, so long as the agent owes no superior duty to a third party regarding the information and the information falls within the scope of the agency.

Based on our analysis of general agency law and its interplay with CR 34.01, we hold that a principal is in control, for purposes of CR 34.01, of all information that is in the possession of its agents to which it is entitled to receive under principles of agency law. Although we have expressly limited the scope of this control to information that the principal is entitled to receive, it is important to note that this only includes information that is properly within the scope of the agency between the principal and agent. The principal has no right to obtain information outside the scope of the agency and, therefore, is not subject to discovery because the principal cannot be said to "control" it. This position not only has support in our inclination for allowing broad discovery of relevant information,[28] but also in other jurisdictions. Most notably, the United States District Court for the District of Massachusetts is often cited for the proposition that " 'control' may be established by the existence of a principal-agent relationship."[29] Further support for this position can be found in the more familiar Kentucky Practice treatise when discussing CR 34.01. Kentucky Practice expounds that "[f]or the purposes of [CR] 34.01, 'control' over documents exists when a party has a legal right to obtain the documents, for example, if a principal-agent relationship exists involving the party."[30]

**25.** RESTATEMENT (THIRD) OF AGENCY § 8.11 (2006); *see also* 3 AM.JUR. 2d *Agency* § 206 ("The duty of an agent to make full disclosure to the principal of all material facts relevant to the agency is fundamental[,] ... and an agent must give the principal any information that the latter would desire to have and which can be communicated to him or her without violating a superior duty to a third person.")

**26.** RESTATEMENT (THIRD) at § 8.11.

**27.** *Id.* at § 8.09.

**28.** *E.g., Primm v. Isaac,* 127 S.W.3d 630, 634 (Ky.2004) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

**29.** *Rosie D. v. Romney,* 256 F.Supp.2d 115, 119 (D.Mass.2003). *See also Perry v. Commonwealth ex rel. Kessinger,* 652 S.W.2d 655, 658 (Ky.1983) (stating that federal court decisions interpreting Federal Rules of Civil Procedure are persuasive authority when interpreting Kentucky Rules of Civil Procedure that were adopted verbatim from their federal counterparts).

**30.** THE LATE KURT A. PHILLIPS, JR., DAVID V. KRAMER & DAVID W. BURLEIGH, 6 KENTUCKY PRAC-

In arguing against this position, Southern Financial relies on three cases. While Southern Financial finds these cases to be on-point and favor its position, we do not read them the same way. Although we ultimately find Southern Financial's position to be unpersuasive, the cases it cites merit discussion nonetheless.

First, Southern Financial cites *In re Chapman*[31] for the proposition that an insurer does not automatically have control over documents held by agents licensed to sell its products. On a closer reading of *Chapman*, however, it becomes clear that it is easily distinguishable from the situation here. First, *Chapman* is not a case dealing with discovery matters, it is an antiquated bankruptcy case that does not even tangentially discuss discovery. More importantly, the issue before us of who "controlled" the documents held by the agent was not before the court in *Chapman*. The issue the court decided was whether the principal or agent had exclusive *ownership* over the documents at the time of bankruptcy. In rendering its decision, the court held that the agency created when a policy is solicited did not reach to the "extent of enabling a court to hold that the information thus obtained is the private and exclusive property of the insurance company."[32] Upon review of the facts and holding of *Chapman*, we find it to be of no persuasive value here.

Southern Financial also relies upon *Edwards v. Hickman*[33] to argue that the decision to allow discovery should be more focused on whether the party truly has control of the information sought, not on the party's status in relation to another. In *Edwards,* this Court was forced to decide whether a shareholder had sufficient control over corporate records to require disclosure under CR 34.01.[34] In applying a traditional case-by-case analysis, we concluded that the shareholder in *Edwards* did exert a substantial amount of control over the corporate records, thereby subjecting the records to discovery under CR 34.01.[35] While Southern Financial attempts to draw an analogy between our ad hoc analysis regarding shareholder control of corporate records and principal control of agent records, it misses the largest distinguishing point between shareholders and principals. In *Edwards,* this Court was careful to note that an entity's records are likely not discoverable through a mere shareholder because they "will not exercise such a degree of control over corporate records sufficient to satisfy the requirement of having a legal right to obtain them on demand."[36] But, as we have discussed above, the existence of a principal-agency relationship *does* provide the principal with a legally recognized right to obtain information in the possession of an agent. This disconnect between the rights of shareholders and principals renders Southern Financial's reliance on *Edwards* to be unfounded.

Lastly, Southern Financial cites *Metropolitan Prop. & Cas. Ins. Co. v. Overstreet*[37] as supporting its contention that a party to litigation does not have control of information in the possession of its agent. In *Metropolitan,* this Court held that a party was not in possession, custody, or

---

TICE: RULES OF CIVIL PROCEDURE ANNOTATED § 34.01 cmt.3.

31. 50 F.2d 252 (W.D.Ky.1931).

32. *Id.* at 253.

33. 237 S.W.3d 183 (Ky.2007).

34. *Id.* at 189–90.

35. *Id.* at 190.

36. *Id.*

37. 103 S.W.3d 31 (Ky.2003).

control of the financial and business records of its expert and, therefore, not required to disclose that information in discovery.[38] While Southern Financial has properly articulated the holding of *Metropolitan*, we do not believe that it supports Southern Financial's position; to the contrary, we find that this case supports our holding and helps to bring the contours of the rule that we announce today into sharper focus. In our view, *Metropolitan* emphasizes the importance of determining the scope of agency when attempting to obtain discovery of information in the possession of an agent. The *Metropolitan* court clearly acknowledged that while the expert's economic and business records may be relevant and a proper topic for cross-examination of the expert, the party having hired the expert had no legal right to obtain the records sought by the adverse party.[39] While the court in *Metropolitan* did not delve into an analysis of agency law, as we have stressed above, a prerequisite for a principal's entitlement to obtain information from its agent is that the information sought falls within the scope of the agency at issue. The principal is not properly entitled to obtain any information in possession of the agent that falls outside of the agency scope. As a result, for purposes of CR 34.01, the principal cannot be in control of any information that is outside the scope of the agency. And the *Metropolitan* case supports this position.

The only remaining issue is whether the information that Southern Financial was ordered to disclose from its agent-lenders was within the scope of the agency and, thus, within the rule we have acknowledged today. We must concede that such a determination is necessarily fact-intensive [40] within the highly discretionary arena that is pretrial discovery.[41] Therefore, we review the trial court's decision for abuse of discretion.[42] Based on the abbreviated record before us, we find that reason and logic mandate a finding that the information ordered to be disclosed by Southern Financial in both the 2011 and 2012 orders was within the scope of the agency between Southern Financial and its agent-lenders. All of the information at issue pertains to the loans that were insured by the policies sold by the agent-lenders. Further, the information sought relates to Southern Financial's potential liability under the policies. Therefore, we cannot find error in the trial court's implicit finding that the information sought was within the scope of the agency between Southern Financial and its lenders.

Having found no error in the trial court's 2011 order, we must now consider the validity of the 2012 order. We must admit that compelling a party to subpoena information or foot the bill for his adversary to do so is an unorthodox

38. *Id.* at 46.

39. *Id.* at 45–46.

40. *People's Nat'l Bank v. Citizens' Sav. Bank of Paducah*, 239 Ky. 30, 38 S.W.2d 959, 960 (1931) ("Agency and scope of authority, actual or apparent, may be established by circumstances and practices."); *see also* 3 Am Jur. 2d *Agency* § 354 ("Where the evidence is conflicting, or different reasonable inferences may be drawn from the evidence, the question of the nature and extent of the authority of an agent is one of fact to be determined by the trier of fact.").

41. *Primm*, 127 S.W.3d at 634 ("Generally, control of discovery is a matter of judicial discretion.").

42. *B. Dahlenburg Bonar, P.S.C. v. Waite, Schneider, Bayless & Chesley Co., L.P.A.*, 373 S.W.3d 419, 424 (Ky.2012) ("A trial court's orders with respect to discovery are reviewed for an abuse of discretion.").

approach to managing discovery. Although this avenue is unorthodox, trial courts do enjoy great leeway and discretion in entering and enforcing discovery orders.[43] Accordingly, we review the 2012 order for abuse of discretion.[44] We have found no authority holding that a trial court cannot require a party to subpoena information from an uncooperative agent, and Southern Financial has similarly not directed us to any. Notwithstanding the novelty of requiring Southern Financial to subpoena its own agent-lenders, we cannot say that doing so was an abuse of discretion. The trial court reasonably used its discretion to withhold imposition of discovery sanctions on Southern Financial and, instead, provided it with alternate avenues to comply with the 2011 order. Accordingly, we hold that the trial court did not err in entering the 2012 order and, therefore, the writ cannot issue.

### III. CONCLUSION.

For the foregoing reasons, we find that Southern Financial was legally in control of the information it was compelled to disclose in the 2011 and 2012 orders; and, therefore, the trial court committed no error, so we affirm the denial of the writ by the Court of Appeals.

All sitting. All concur.

---

43. *See Wilson v. Commonwealth,* 381 S.W.3d 180, 191 (Ky.2012) ("A trial court has broad discretion in addressing a violation of its order."); *Blue Movies, Inc. v. Louisville/Jefferson County Metro Gov't,* 317 S.W.3d 23, 39 (Ky.2010) ("[I]t is well-settled that a trial court has broad discretion in resolving disputes in the discovery process . . . .").

44. *Wilson,* 381 S.W.3d at 191 ("We review a trial court's ruling regarding a discovery violation, including a decision not to impose sanctions, for abuse of discretion."); *B. Dahlenburg Bonar, P.S.C.,* 373 S.W.3d at 424 ("A trial court's orders with respect to discovery are reviewed for an abuse of discretion.").