# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 14, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2018-SC-000474-MR DATE 4/4/19 Kim Redmon, DC

LOGAN COONS, A MINOR, BY AND     APPELLANT
THROUGH HIS NEXT FRIEND, NATURAL
GUARDIAN AND PARENT, JENNIFER VOGT


ON APPEAL FROM KENTUCKY COURT OF APPEALS
V.             NO. 15-CI-006392


HON. JUDITH MCDONALD-BURKMAN,     APPELLEE
JUDGE, JEFFERSON CIRCUIT COURT

AND

NORTON HEALTHCARE, INC.;
NORTON HOSPITALS, INC., d/b/a
NORTON'S WOMEN'S AND CHILDREN'S
HOSPITAL, f/k/a NORTON SUBURBAN
HOSPITAL; COMMUNITY MEDICAL
ASSOCIATES, INC.; WILLIAM L. KOONTZ,
M.D. AND ASSOCIATES IN OBSTETRICS
AND GYNECOLOGY OF LOUISVILLE, PLLC     REAL PARTIES IN INTEREST


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant Logan Coons, a minor, by and through his Next Friend,

Natural Guardian and Parent, Jennifer Vogt ("Appellant"), appeals the decision

of the Kentucky Court of Appeals denying his petition for a writ of prohibition.

Appellant filed a petition for writ upon the trial court's issuance of a Qualified Protective Order ("QPO") granting defendants (collectively "Norton") the ability to conduct ex parte interviews with Coons's and Vogt's treating physicians. Appellant argues on appeal that (1) the lower courts erred in failing to apply limitations and conditions upon the QPO; (2) the QPO violates Appellant's right to an accounting under the Health Insurance Portability and Accountability Act ("HIPAA"); and (3) the QPO places healthcare providers at a grave risk of violating the ethical duties placed upon them under Kentucky law. Finding none of Appellant's claims meritorious, we affirm.

## I. Factual and Procedural Background.

In 2011, Vogt gave birth to Logan at Norton Suburban Hospital. Appellant sued Norton alleging that Norton breached the appropriate standard of care during the pregnancy and delivery of Logan. In February 2018, Norton filed a Motion for a Qualified Protective Order Regarding *Ex Parte* Communications and tendered a proposed QPO. Appellant filed a response in opposition of the Order and tendered a modified QPO. The trial court entered the QPO tendered by Norton, thus allowing ex parte communications with Logan's and Vogt's physicians. Appellant petitioned the Court of Appeals to issue a Writ of Prohibition preventing the QPO's enforcement. The Court of Appeals denied the petition, holding that the trial court had discretion in issuing QPOs, and the present QPO comports with this Court's holding in *Caldwell v. Chauvin*, 464 S.W.3d 139 (Ky. 2015). This appeal followed.

2

## II. Standard of Review.

Ordinarily, we review the Court of Appeals decision of whether to grant or deny a writ for abuse of discretion. *S. Fin. Life Ins. Co. v. Combs,* 413 S.W.3d 921, 926 (Ky. 2013). However, when the Court of Appeals omits the analysis of the writ prerequisites and proceeds directly to the merits, as it did here, we review the availability of the writ remedy *de novo. Caldwell,* 464 S.W.3d at 146.

## III. Analysis.

Appellant takes issue with several aspects of the present QPO and asks for a writ prohibiting its execution. We note that the "issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence." *Id.* at 144 (citation omitted). Further, "the issuance of a writ is inherently discretionary" and even upon a showing that the "requirements are met and error found, the grant of a writ remains within the sole discretion of the Court." *Id.* at 145–46 (citation omitted).

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Id.* at 145 (citation omitted). However, Appellant urges the Court to analyze the present issue under the "certain special cases" exception because it involves an important discovery issue. We have held in certain situations that a writ may

3

be issued "'in the absence of a showing of specific great and irreparable injury . . . provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.'" *S. Fin. Life Ins. Co.*, 413 S.W.3d at 926 (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)). While we might agree with Appellant that no remedy exists on appeal, and that if error did exist, we would need to correct it in the interest of orderly judicial administration, instead of conducting a "gateway analysis" as to whether an initial showing has been made, we elect—in the interests of judicial economy—to "proceed[] directly to the issue of error because, in our opinion, this issue is uncomplicated." *Id.* at 927 n.20.

The QPO reads, in pertinent part, as follows:

1. Authorization of All of Plaintiffs' Health Care Providers for the Disclosure of All of Plaintiffs' Protected Health Information Through *Ex Parte* Communications with Counsel for Defendants:

a. All of Logan Coons's and Jennifer Vogt's protected health information owned, maintained or otherwise in the custody of all of their health care providers, **is relevant and/or discoverable concerning the Plaintiffs' claims and/or the Defendants' defenses which are the subject of this law suit**;

. . . .

c. The health care providers of Logan Coons and Jennifer Vogt are expressly authorized, **but not required**, under this order to disclose all protected health information of Logan Coons and Jennifer Vogt of which the provider has knowledge or possession to Defendants through informal, independent, *ex parte* communications with Defendants' attorneys and/or their agents;

4

. . . .

2. The Parties' Obligations Concerning Protected Health Information:

. . . .

**c.** The parties shall not use or disclose the records and other information provided them by these health care providers **for any purpose not related to the subject litigation.**

(emphasis added).

Appellant first argues that both lower courts erred in failing to apply limitations and conditions upon the QPO. Our decision in *Caldwell* makes clear that "no limitations [exist] on a defendant's ability to request an ex parte interview with the plaintiff's treating physician." 464 S.W.3d at 158 (citation omitted). A QPO must satisfy HIPAA requirements under 45 C.F.R.[1] § 164.512(e), but once HIPAA has been complied with "nothing in Kentucky law prohibits defendants from seeking ex parte contacts with nonexpert physicians that treated the plaintiff as if they are ordinary fact witnesses." 464 S.W.3d at 159. The QPO issued by the trial court complies with the HIPAA requirements of 45 C.F.R. § 164.512(e) and pertains only to information relevant to the case at hand.[2] Furthermore, it puts physicians on notice that they are not required to participate in any ex parte communications. Therefore, the QPO follows

---

[1] Code of Federal Regulations.

[2] Appellant makes a secondary argument that, at a minimum, limitations regarding access to Vogt's records should be imposed because she is not a party. However, the entire case revolves around the medical care of Vogt during her pregnancy and during the birth of Logan. Vogt placed her medical care at issue by filing this lawsuit. Therefore, the trial court did not err in allowing discovery of Vogt's medical records in addition to Logan's.

5

proper procedure and no further limitations are necessary for the QPO to comply with HIPAA and our precedent.

Appellant next argues that the current QPO violates his right to an accounting because the QPO does not identify, by name, which healthcare providers Norton is permitted to contact.[3] This argument lacks merit. Appellant may still contact all of his and Vogt's healthcare providers for an accounting, and nothing in the QPO prevents him from doing so. Furthermore, per the facts of the present case, Norton already has Appellant's medical records, so no confusion exists as to which healthcare providers Norton is most likely to reach out to for a potential ex parte discussion.

Lastly, Appellant argues that the QPO presents serious legal and ethical concerns for healthcare providers. Norton asserts, correctly, that we have already rejected these exact arguments in *Caldwell.* First, *Caldwell* notes that Kentucky does not have a physician-patient privilege, and we reiterate that litigants should "abandon this tired argument." *Id.* at 155. Second, we acknowledge that if a medical provider participates in an ex parte communication with defense counsel ethical concerns outside of this tribunal could arise.[4] However, in *Caldwell,* this Court held that the Code of Medical

---

[3] HIPAA gives patients "a right to receive an accounting of disclosures of protected health information made by a covered entity in the six years prior to the date on which the accounting is requested[.]" 45 C.F.R. § 164.528(a)(1).

[4] The American Medical Association Code of Medical Ethics states that a "'physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law.'" 464 S.W.3d at 155 (quoting American Medical Association, Council on Ethical and Judicial Affairs, Code of Medical Ethics § 5.05 (1994)); *see also* American Medical Association, Council on

Ethics does not carry the force of law, and opined that, "[a]dmittedly, [an] ethical duty may restrain [a] physician's willingness to agree to [an ex parte] interview; but it in no way prohibits a party to litigation from requesting one." *Id.* at 156. This Court is not the proper arena to bring an argument regarding potential ethical violations of non-party physicians. We urge parties to discontinue the practice of bringing these arguments through the writ process.

## IV. Conclusion.

We find that Judge McDonald-Burkman properly issued a QPO which conforms to the requirements of HIPAA and our recent decision in *Caldwell.* Therefore, we affirm.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting.

Minton, C.J.; Hughes, VanMeter, JJ., concur.

Keller, J., concurs in result only by separate opinion in which Lambert and Wright, JJ., join.

KELLER, J., CONCURRING IN RESULT ONLY: I concur with the result of the majority opinion but write separately to reinforce my concern that Kentucky should adopt a general physician-patient privilege. *See Caldwell v. Chauvin*, 464 S.W.3d 139, 160 (Ky. 2015) (Keller, J., concurring). It is also unfortunate that the majority echoes *Caldwell's* admonition that litigants should "abandon this tired argument." *Id.* at 155. It is often citied that "the doctrine of stare decisis does not commit us to the sanctification of ancient

---

Ethical and Judicial Affairs, Code of Medical Ethics § 5.05 (2007) (similar language to 1994 version).

fallacy." *Hilen v. Hays,* 673 S.W.2d 713, 717 (Ky. 1984). While changing or extending current precedent should be done with the utmost discretion and deliberation, it is an important aspect of our Anglo-American legal system that, as society progresses, so should the law.

Our modern electronic medical records storage system allows for great efficiencies and advances in patient care. However, it must be noted that with the vast amount of personal medical information available at the click of a keystroke, comes great responsibility in protecting this highly sensitive data.

While we fiercely protect what is uttered within the confines of matrimony and pastoral care, our concern for the sanctity of the physician-patient relationship is woefully incomplete. As I have previously stated, however, KRE 507 recognizes that communications between a psychotherapist and patient are privileged. A psychotherapist is defined, in part, as "[a] person licensed by the state of Kentucky, or by the laws of another state, *to practice medicine* ... while engaged in the diagnosis or treatment of a mental condition." KRE 507(2)(A) (emphasis added).

Thus, Kentucky does recognize that medical communications are privileged if they occur within the mental health setting. It logically follows that we embrace, and subsequently codify, a general physician-patient privilege as well. That privilege, if similar to the psychotherapist-patient privilege, would prevent disclosure of privileged communications unless a patient places her

8

medical condition into controversy and the information in question is obtained in conformity with the applicable rules of practice and procedure.[5]

Moreover, it is no surprise that "[t]he majority of states have adopted, by statute or rule, a physician-patient privilege . . . ." 98 C.J.S. Witnesses § 374. *See also, e.g., State v. Almonte,* 644 A.2d 295, 301 (R.I. 1994) ("forty-three states and the District of Columbia have enacted physician-patient privileges . . . .") (Lederberg, J., dissenting). The reasoning supporting the nearly universal application of this privilege becomes even more acute in cases like the present, where the medical information of the mother *and* her infant child are unprotected. As such, it is time for Kentucky to join our sister states and formally adopt a general physician-patient privilege.

Lambert and Wright, JJ., join.

---

[5]     *See also,* Health Insurance Portability and Accountability Act (HIPAA).

COUNSEL FOR APPELLANT:

Paul A. Casi II
Jeffrey Wayne Adamson
PAUL A. CASI II, P.S.C.


COUNSEL FOR APPELLEE:

Honorable Judith McDonald-Burkman


COUNSEL FOR REAL PARTIES IN INTEREST,
NORTON HEALTHCARE, INC.; NORTON
HOSPITALS, INC., D/B/A NORTON'S WOMEN'S
AND CHILDREN'S HOSPITAL, F/K/A NORTON
SUBURBAN HOSPITAL AND COMMUNITY
MEDICAL ASSOCIATES, INC.:

Beth Hendrickson McMasters
Ashley Butler
Whitney Graham
MCMASTERS KEITH BUTLER, INC.


COUNSEL FOR REAL PARTIES IN INTEREST,
WILLIAM L. KOONTZ, M.D. AND ASSOCIATES
IN OBSTETRICS AND GYNECOLOGY OF LOUISVILLE,
PLLC:

Donald Kenneth Brown, Jr.
Michael Brian Dailey
Rachel Ann Stratton
O'BRYAN, BROWN & TONER PLLC

10