RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0365-MR

GOUTHAM REDDY                                                    APPELLANT

v.              APPEAL FROM KENTON CIRCUIT COURT
                HONORABLE PATRICIA M. SUMME, JUDGE
                ACTION NO. 20-CI-01682

SRIKAR REDDY                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Goutham Reddy appeals the Kenton Circuit Court's Summary

Judgment entered on March 15, 2022, adjudicating a will contest in favor of the

appellee, Srikar Reddy.  Upon review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Dr. Marpadga Purushotham Reddy (Dr. Reddy), a resident of Kenton County, Kentucky, passed away at the age of 79 on August 2, 2020. Later that month, Goutham Reddy – holding himself out as Dr. Reddy's adopted son – initiated probate proceedings in Kenton District Court. There, Goutham produced a will that Dr. Reddy had executed in 1980, which effectively named him Dr. Reddy's sole beneficiary. However, shortly after the district court admitted the 1980 will to probate, the proceedings became adversarial when Dr. Reddy's nephew, Srikar Reddy, appeared and produced a will that Dr. Reddy had purportedly executed on September 2, 2011. This subsequent will, by its terms and pursuant to applicable law, revoked the 1980 will. The will named Srikar the executor of Dr. Reddy's estate and poured the assets of Dr. Reddy's residuary estate into a testamentary trust.[1] Goutham, who was not named as a beneficiary of said trust, contested the validity of the 2011 will. Thereafter, considering the district court's lack of authority to resolve the parties' dispute over which of the two wills controlled, the parties sought declaratory relief from Kenton Circuit Court. *See* Kentucky Revised Statute (KRS) 24A.120(2) and KRS 394.240.

In support of his claim that the 2011 will was controlling, Srikar introduced an original, signed copy of the will into the circuit court's record. He

---

[1] The testamentary trust provided for four beneficiaries, including Goutham Reddy's son.

correctly noted that, on its face, the will complied with both KRS 394.040[2] and

Ohio Revised Code (ORC) 2107.03.[3] And, he produced affidavits from the two

individuals who had signed the 2011 will as witnesses, attorney Thomas T.

Keating and Dr. Reddy's longtime financial advisor, Thomas Hampton, with UBS

Financial Services (UBS); in sum, both witnesses averred that Dr. Reddy had

signed the will in their presence on September 2, 2011, and that he appeared

competent and was under no restraint or impairment at the time. Srikar also

produced copies of a mortgage and deed that Dr. Reddy had signed and filed with

---

[2] KRS 394.040 provides:

> No will is valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction. If the will is not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two (2) credible witnesses, who shall subscribe the will with their names in the presence of the testator, and in the presence of each other.

[3] Although Dr. Reddy resided in Kentucky at all relevant times, the 2011 will indicates Dr. Reddy executed it at his attorney's office in Cincinnati, Ohio. Ohio Revised Code (ORC) 2107.03 provides:

> Except oral wills, every will shall be in writing, but may be handwritten or typewritten. The will shall be signed at the end by the testator or by some other person in the testator's conscious presence and at the testator's express direction. The will shall be attested and subscribed in the conscious presence of the testator, by two or more competent witnesses, who saw the testator subscribe, or heard the testator acknowledge the testator's signature.
>
> For purposes of this section, "conscious presence" means within the range of any of the testator's senses, excluding the sense of sight or sound that is sensed by telephonic, electronic, or other distant communication.

the Kenton County Clerk's office on February 28, 2000; both documents bore Dr. Reddy's signature, which appeared consistent with what purported to be his signature on the 2011 will.

No party to the proceedings below has ever contended Dr. Reddy lacked testamentary capacity or suffered undue influence at any given time. Instead, during the sixteen-month pendency of the underlying circuit court proceedings, the focus of Goutham's opposition to Dr. Reddy's purported 2011 will was upon: (1) its authenticity; and (2) whether it, too, had been subsequently revoked. To this first point, Goutham asserted in several unverified pleadings and motions that he suspected and believed Dr. Reddy's signature on the 2011 will was a forgery, and that he intended to hire a handwriting expert to verify his claim. Ultimately, Goutham failed to introduce an affidavit from any handwriting expert, nor introduce any other evidence supporting his claim of forgery. And, Goutham failed to depose Keating and Hampton, who had sworn under oath they had witnessed Dr. Reddy sign the 2011 will.

Regarding his argument that the 2011 will had been revoked, Goutham noted that discovery produced by UBS in relation to an investment account Dr. Reddy held with that entity included a printed computer screenshot of Dr. Reddy's account. The screenshot in question provided a list of "Account Documents On File," one of which was listed as "MISCELLANEOUS

DOCUMENT *REDDY TESTAMENTARY TRUST*."  The screenshot stated this document had a "scan date" and "status date" of "11/26/2019."  Next to this information was a hyperlink that presumably led to a scanned copy of the document.  With that in mind, Goutham argued this computer screenshot provided grounds to suspect that Dr. Reddy had made some other testamentary disposition of his estate, on a date closer to 2019, that would have revoked his purported 2011 will.

Additionally, Goutham presented a pair of unverified letters, respectively dated November 16 and November 17 of 2020, purporting to be from two individuals claiming to be acquaintances of Dr. Reddy.  In each letter, the authors described having one or two conversations with Dr. Reddy between 2017 and 2019, where Dr. Reddy had expressed interest in establishing a trust for Goutham's benefit and for the benefit of Goutham's son.  Additionally, Goutham explained in several more unverified filings that Dr. Reddy had a safe deposit box at a bank in India.  Goutham suggested that if Dr. Reddy did establish trusts for his and his son's benefit, Dr. Reddy might have placed the operative trust document – the very document he suspected had also been scanned into Dr. Reddy's UBS account – into that safe deposit box.

To address Goutham's suspicions, the circuit court held a video conference hearing on February 10, 2022.  After being duly sworn, UBS's

designated representative enabled the "screen-sharing" function of his computer and demonstrated for the circuit court and the parties that the hyperlink, when utilized, led to a scanned copy of Dr. Reddy's purported 2011 will – a will that, pursuant to its "Article III" provision, created a testamentary trust. In other words, Dr. Reddy's purported 2011 will had not been *superseded* by a subsequent will or trust instrument. UBS's representative testified that the trust label on the account had been created for purposes of making a hyperlink to the document in its system; and that "11/26/2019" was simply the date that Dr. Reddy's purported 2011 will had been scanned into its system.

Based on the foregoing, Srikar moved the circuit court for a summary judgment that Dr. Reddy's purported 2011 will was valid and that it – rather than Dr. Reddy's 1980 will – should be admitted for probate. On March 15, 2022, summary judgment was granted for Srikar. This appeal followed. Additional facts will be discussed as necessary in our analysis that follows.

## STANDARD OF REVIEW

To begin, our standard of review of a summary judgment on appeal is as follows:

> "[W]hether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent

to produce any evidence at the trial warranting a judgment in his favor." *Steelvest, Inc., v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In *Steelvest*, the word "'impossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). In ruling on a motion for summary judgment, the court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480. A party opposing a summary judgment motion cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id*. at 481.

*Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 789-90 (Ky. App. 2012).

"Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So, we operate under a de novo standard of review. . . ." *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017) (quoting *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013)).

*Phelps v. Bluegrass Hospitality Mgt., LLC*, 630 S.W.3d 623, 627 (Ky. 2021).

## ANALYSIS

On appeal, Goutham offers several arguments that generally fall into three categories: (1) dissatisfaction with the result of the circuit court's summary judgment; (2) dissatisfaction with the circuit court's failure to resolve what Goutham believes are relevant issues; and (3) dissatisfaction with how the circuit

-7-

court permitted discovery to proceed below regarding the UBS hyperlink. We will examine each argument category.

### i. The substance of the circuit court's summary judgment.

In its summary judgment, the circuit court explained that Srikar produced *prima facie* evidence that Dr. Reddy's purported 2011 will was valid; and that Goutham had provided no evidence capable of calling into question the 2011 will's validity. We agree with the circuit court's conclusions. On its face, the 2011 will complied with applicable law. The unrefuted affidavits of Keating and Hampton support that Dr. Reddy executed the 2011 will. There is also no suggestion that Dr. Reddy lacked testamentary capacity or suffered undue influence at any given time. Goutham relies simply on his unsubstantiated and unverified allegations and pleadings which on their face do not create a genuine issue of material fact. Simply put, we find no evidence in the record below to refute the authenticity of the 2011 will.

### ii. The circuit court's failure to resolve certain issues.

Regarding his second category of arguments, Goutham asserts the circuit court failed to adjudicate three issues. As to the first issue, there is an unresolved disagreement between the parties regarding Goutham's relation to Dr. Reddy. According to the parties' respective pleadings, Goutham is undisputedly the son of Dr. Reddy's cousin, Hyma Reddy. Additionally, Goutham claims –

without citing any evidence, and despite the appellee's assertions to the contrary –
that Dr. Reddy "adopted" him during a ceremony in India several decades ago; and
he faults the circuit court for not exploring this matter in its judgment.

However, Goutham's purported status as Dr. Reddy's adopted son
was not a *material* fact for purposes of summary judgment, as it had no bearing
upon the validity of the 2011 will, the sole issue in this litigation. Indeed, through
the execution of a valid will, testators may legally disinherit their children.
"[M]erely because one happens to be the offspring of a testator does not entitle one
to be included in an estate. Moreover, there is nothing requiring a parent to make
such a provision." *Wallace v. Scott*, 844 S.W.2d 439, 441 (Ky. App. 1992).

The second unresolved issue is the significance of an attempted
"change of beneficiary" designation relating to a John Hancock annuity contract
Dr. Reddy apparently held in the capacity of a custodian. A change of beneficiary
form, dated September 2, 2011, and bearing Dr. Reddy's purported signature, was
filed of record and appears to indicate Dr. Reddy attempted to change the
beneficiary of the annuity contract to "Trustee under the will of M.P. Reddy dated
09/02/2011." But, another document of record – a September 20, 2011, letter from
John Hancock – explained that John Hancock was unable to comply with the
request because "Beneficiary designations cannot be changed on contracts owned
by a custodian." Goutham also faults the circuit court for not exploring this in its

judgment. However, when Goutham pressed this argument before the circuit court during a March 28, 2022, post-judgment hearing, he could not explain how this affected the validity of the 2011 will, or how it supported his argument that the will had been superseded by another will that Goutham could not produce.

The third unresolved issue, as stated in his appellate brief, is that the circuit court failed to rule on Goutham's discovery motion to order the authorities in India to conduct an inventory of Dr. Reddy's safe deposit box located in that country. Based on our review of the record, the circuit court did in fact rule on the motion. In ruling from the bench during the March 28, 2022, hearing, the circuit court denied his motion because: (1) the court determined it lacked jurisdiction to order Indian authorities to conduct any such inventory; (2) Goutham's speculation about the potential contents of a supposed safe deposit box was an insufficient reason to stay summary judgment or otherwise extend discovery – which had already been proceeding for sixteen months at that point; and (3) assuming a subsequent accounting and inventory of the purported safe deposit box eventually yielded new evidence of a different and superseding testamentary disposition, Goutham could seek to set aside the summary judgment at a later date.

Due to his apparent misapprehension of the record, Goutham does not address any of the circuit court's justifications for denying his discovery motion. We need not address them in any depth, either, because "[i]t is not our function as

-10-

an appellate court to research and construct a party's legal arguments." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005). "We will not search the record to construct [appellant's] argument for him, nor will we go on a fishing expedition to find support for his underdeveloped arguments." *Prescott v. Commonwealth*, 572 S.W.3d 913, 923 (Ky. App. 2019).

Accordingly, we conclude these "issues" are really nonissues as pertains to the entry of summary judgment and otherwise do not create any genuine issues of material fact.

### iii. How the circuit court permitted discovery to proceed below regarding the UBS hyperlink.

Goutham's third category of arguments also looks to discovery issues and revolves around UBS's "REDDY TESTAMENTARY TRUST" hyperlink discussed above. In sum, Goutham argues the circuit court erred by holding a video conference hearing to allow UBS's representative to provide testimony and demonstrate the function of the hyperlink. He asserts that, for purposes of ensuring the authenticity of the evidence presented, UBS's representative should have testified and conducted the demonstration in person, either in the courtroom or at a UBS office with all parties in attendance. However, Goutham cites no authority in support of his position, nor does he refute the general rule that circuit courts have considerable leeway and discretion in overseeing discovery. *See S. Fin. Life Ins. v. Combs*, 413 S.W.3d 921, 932 (Ky. 2013). The circuit court provided Goutham an

adequate opportunity to explore what was at best a tangential issue. UBS's agent testified under oath and Goutham was permitted to cross-examine him. More importantly, Goutham's enduring disbelief of that evidence was insufficient to preclude entry of summary judgment given that he failed to present any affirmative evidence to defeat the motion. *Phelps*, 630 S.W.3d at 627. Accordingly, we find no error in the court's granting of summary judgment.

For the reasons stated, we affirm the circuit court's Summary Judgment entered March 15, 2022.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Goutham Reddy, *Pro Se*
Union, Kentucky

BRIEF FOR APPELLEE:

Kurt M. Irey
Mason, Ohio