B. DAHLENBURG BONAR,
P.S.C.; and Barbara D.
Bonar, Appellants

v.

WAITE, SCHNEIDER, BAYLESS &
CHESLEY CO., L.P.A.; Stanley M.
Chesley; and Robert A. Steinberg, Appellees.

No. 2010–SC–000087–DG.

Supreme Court of Kentucky.

Aug. 23, 2012.

William C. Rambicure, Christopher B. Rambicure, Rambicure Law Group, PSC, Lexington, KY, Stephen D. Wolnitzek, Wolnitzek & Rowekamp, PSC, Covington, KY, Counsel for Appellants.

James M. Gary, Weber & Rose, PSC, Louisville, KY, Counsel for Appellees, Waite, Schneider, Bayless & Chesley Co., LPA and Robert A. Steinberg.

James M. Gary, Weber & Rose, PSC, Sheryl G. Snyder, Griffin Terry Sumner, John Kendrick Wells, IV, Frost Brown Todd, LLC, Louisville, KY, Counsel for Appellee, Stanley M. Chesley.

Opinion of the Court by Justice CUNNINGHAM.

This matter involves a dispute over attorney's fees. Appellants, Barbara D. Bonar and her law firm, B. Dahlenburg Bonar, P.S.C. (collectively, "Bonar"), claim entitlement to a portion of the attorney's fees awarded in the class action settlement of *Doe v. Roman Catholic Diocese of Covington*, Appellees are Waite, Schneider, Bayless and Chesley Co., L.P.A.; Stanley M. Chesley; and Robert A. Steinberg (collectively, "WSBC"). Bonar and WSBC initiated the *Doe* action as co-counsel. However, after the case was certified as a class action, but before the settlement was negotiated, Bonar withdrew. She claims that she was forced to do so by WSBC.

Following a bench trial, the Boone Circuit Court concluded that Bonar was not entitled to any of the attorney's fees because her withdrawal was voluntary. Though that conclusion disposed of the matter, the court went on to specifically reject the other theories of recovery presented by Bonar. The court found that, even if Bonar had been forced to withdraw from the case without cause, she would not be entitled to any fees measured by *quantum meruit*. The fees she recovered through the settlement of individual claims of prospective class members exceeded the amount recoverable by *quantum meruit*. Additionally, the court found that Bonar committed "numerous ethical violations" during her participation as class co-counsel, which would have constituted grounds for removal and forfeiture of any fees due.

The Court of Appeals affirmed the judgment and we granted Bonar's motion for discretionary review. In her brief to this Court, Bonar focuses nearly exclusively on the trial court's finding that she could have been removed from the *Doe* action for cause and vigorously disputes the conclu-

sion that she committed ethical violations.[1] Further, both parties expend significant effort disputing the factual circumstances surrounding this case, including how the co-counsel relationship began and the fee-splitting agreement. This information is largely irrelevant and we recount only those facts necessary to our conclusions herein.

### Factual Background

On June 21, 2002, Bonar filed suit against the Diocese of Covington in an action styled *John DiMuzio, et al. v. Roman Catholic Diocese of Covington.* In addition to a host of employment-related claims, the complaint alleged long-term concealment of sexual abuse by diocesan priests. Following the filing of the complaint, several victims of sexual abuse began to contact Bonar seeking representation. About the same time, Robert A. Steinberg, an attorney with WSBC, was also investigating child sexual abuse claims and considering a possible class action against the Diocese of Covington.

In December of 2002, Bonar and Steinberg discussed their similar claims and, thereafter, Bonar agreed to join WSBC in a class action against the Diocese. The *Doe* complaint was filed in Boone Circuit Court on February 4, 2003, with Bonar listed among class counsel and her clients listed as class representatives. In a letter dated February 6, 2003, Steinberg wrote Bonar to confirm her participation as co-counsel in the case and the fees she would receive. The arrangement contemplated that Bonar would receive a certain percentage of the overall fees awarded to class counsel. Bonar agreed by e-mail dated February 10, 2003. No written agreement was ever formalized.

A petition for class certification was filed in July of 2003, and a memorandum was filed a couple of months later in September. Both of these pleadings listed Bonar as co-counsel. In this memorandum, the plaintiffs alleged, for the first time, that the Diocese was continuing to place sexual predators in positions involving contact with children. WSBC drafted the memorandum and Bonar did not review it prior to its filing.

Evidently, Bonar was uncomfortable with the allegations contained in the memorandum and was unaware that the class claim would implicate existing programs in the Diocese. Immediately after it was filed, Bonar contacted Steinberg to express her concerns. She requested that her name be removed from the memorandum because it was "placing [her] in an extremely uncomfortable position with many of [her] clients and peers." She wrote to Steinberg: "I am a supporter, volunteer, and member of many of these programs, and my law practice involves clients, witnesses, and other persons who are administrators, board members, and personnel in many of the current Diocese of Covington school programs." In a subsequent letter, she explained that the memorandum "indicates a position which could be interpreted as contrary to some of my clients' interests."

Bonar also filed a "Notice to Clarify the Record" with the trial court, in which she denied any participation in the drafting, review, or filing of the memorandum.

---

1. In doing so, Bonar makes repeated reference to unrelated matters pending in other tribunals in order to underscore allegations concerning Appellee Stanley M. Chesley's professional conduct in other cases. Appellees have moved to strike those portions of Appellants' brief and reply brief, including certain exhibits attached thereto. We agree that these references and exhibits are entirely irrelevant to the issues presented in this appeal. The motion is granted by separate order and the irrelevant materials have not been considered by this Court.

Thereafter, on October 1, 2003, *Doe* was certified as a class action. On January 9, 2004, Bonar filed a motion to withdraw. Her accompanying affidavit stated that "recent changes in the composition of the class members have created a conflict of interest for Affiant, prohibiting Affiant from continuing as class counsel." She contemporaneously filed a notice of attorney's lien pursuant to KRS 376.460.

In May of 2005, a tentative settlement was reached in the *Doe* matter. Following a fairness hearing on the proposed settlement, the Boone Circuit Court addressed the issue of attorney's fees. In subsequent pleadings regarding that issue, Bonar alleged, for the first time, that WSBC had forced her to withdraw. Over the next several months, the *Doe* settlement was approved and an order setting attorney's fees was issued. Attempts to mediate the remaining dispute between Bonar and WSBC failed. Eventually, the parties agreed to remove the attorney's fees dispute from the class action and created the present case style.

### Bonar is not entitled to any fees

■ The trial court found that Bonar's withdrawal from the class action was voluntary. This factual finding will not be disturbed unless clearly erroneous. CR 52.01. Upon review of the record, we agree with the Court of Appeals that there is the requisite "substantial" evidence supporting the trial court's finding.

Bonar's letters to Steinberg following the filing of the September 2003 memorandum explain, in her own words, the reason for her withdrawal. She plainly states that she perceived a conflict between the allegations contained in that memorandum and her professional and personal ties to the Diocese. It is clear that Bonar wished to distance herself from these allegations because it jeopardized her relationship with her client base and her professional colleagues.

The affidavit of Carrie Huff also supports this conclusion and provides insight into why Bonar's affidavit references only a client conflict. Huff is an attorney who represented the Diocese in the *Doe* settlement and other sexual abuse claims, and who worked closely with Bonar on these matters for several years. Huff characterized the September 2003 memorandum as a "reprehensible effort[ ] on the part of class counsel to deride and discredit the Bishop's efforts to address the sexual abuse crisis honestly and with pastoral concern for the victims." In subsequent conversations, Bonar expressed her agreement with Huff's position. When Huff read Bonar's later motion to withdraw, she asked Bonar "why she didn't simply say honestly that she disapproved of class counsel's litigation and public relations strategies." According to Huff, Bonar responded that a "conflict arising out of her relationship with a business client ... was sufficient reason to justify the withdrawal, and she did not want to attract attention to the withdrawal by publicly criticizing her co-counsel's tactics." In short, Huff "saw no evidence whatsoever that Ms. Bonar was being unwillingly excluded from representation of the class. To the contrary, she appeared to be trying to curry favor with the Diocese and with me by distancing herself from the class action."

The weight of the evidence presented at trial supports the conclusion that Bonar withdrew from the case voluntarily. She did so because she found the class's position towards the Diocese at odds with that of her clientele and colleagues. Finding no reason to disturb the trial court's factual finding, we turn to its legal conclusion that Bonar was not entitled to any portion of the attorney's fees awarded to class counsel.

 When an attorney voluntarily withdraws from a contingency fee case without good cause, he or she forfeits any fee. *Lofton v. Fairmont Specialty Ins. Managers, Inc.,* 367 S.W.3d 593, 597 (Ky. 2012). *See also* 7A C.J.S. Attorney & Client § 360 (2012) ("[A]n attorney who voluntarily withdraws from a case without good cause forfeits recovery of compensation for services performed, and he or she may not recover either on the contract or on quantum meruit."). Whether good cause exists must be determined on a case-by-case basis. *Id.* Here, Bonar withdrew because she believed WSBC's litigation tactics would jeopardize her relationship with clients and professional peers. This does not constitute "good cause," which might entitle her to *quantum meruit* compensation, particularly in light of the fact that Bonar's ties to the Diocese of Covington existed at the time she began representation of the class. The trial court properly concluded that Bonar forfeited any claim to the attorney's fees awarded to class counsel.

 Bonar also argues that the above-stated principles are inapplicable because she had a separate fee-splitting agreement with WSBC, as opposed to a contingency fee agreement with a client. She claims the agreement with WSBC never contemplated her continued participation in the *Doe* action beyond its filing, so that she is contractually owed her portion of the fees for the work she performed before withdrawing. This assertion is not supported by the record, nor would it alter our conclusion.

Because neither of the parties memorialized the fee-splitting agreement, we look mainly to the series of correspondence between Bonar and Steinberg that concerns fees. Bonar's fees were set as a percentage of the "net fees received in the case." As with any contingency fee agreement, Bonar would only earn fees if the class action was successful and only up to the amount approved by the trial court. Implicit in this agreement is the assumption that Bonar would remain as class co-counsel until the case was resolved, even though she was not expected to litigate the matter. There is nothing in the record to suggest otherwise. In fact, that Bonar provided explanations to Steinberg, Huff and Chesley for her withdrawal is indication that her departure was unexpected and premature.

Even assuming *arguendo* that the series of correspondence between Bonar and Steinberg regarding the fee-split constitutes a contract, she is not entitled to any recovery. Whether the fee is established through a contingency agreement with a client or through a fee-splitting agreement with co-counsel, the underlying principle remains—an attorney who voluntarily leaves a case absent good cause is not entitled to a portion of the fees earned. It would defy common sense to allow an attorney to voluntarily withdraw from a case without good cause, but nonetheless enforce a contract with co-counsel to split fees ultimately awarded. *See Hofreiter v. Leigh,* 124 Ill.App.3d 1052, 80 Ill.Dec. 319, 465 N.E.2d 110, 112 (1984) (where rules concerning compensation of discharged attorney were applied equally to contingency fee agreements and fee-splitting agreements between co-counsel).

The trial court's finding that Bonar voluntarily withdrew from the *Doe* matter is based on substantial evidence. Good cause is not established where an attorney withdraws because the clients' position jeopardizes her personal and professional relationships. This is particularly true when the attorney has longstanding and deep personal and professional ties to the opposing party. Accordingly, Bonar forfeit-

ed any fees she may have otherwise been entitled to.

### Discovery Issues

■ Bonar argues that the trial court improperly limited discovery. It appears she sought access to information pertaining to other class actions in which WSBC was class counsel, WSBC's prior fee-splitting agreements in other cases, WSBC's history of opting-out class members in other class action suits, and WSBC's fee-splitting agreements with other *Doe* co-counsel. Bonar fails to provide a single legal citation to support her argument or the conclusion that reversal is required.

■ A trial court's orders with respect to discovery are reviewed for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). It is apparent that the parties bitterly disputed nearly every factual aspect of this case. The trial court properly limited discovery to evidence necessary to consideration of the issues. The information which Bonar sought was irrelevant to the simple issue of whether she was entitled to any of the attorney's fees awarded in the *Doe* action. We find no indication that the trial court abused its discretion.

### Fair Trial

■ Finally, Bonar argues that her right to a fair trial was violated by the trial court's statements regarding her conduct. Mid-trial, the trial court noted that the Kentucky Bar Association had requested all records in the case once it was resolved. The trial court further commented that it would have referred the case to the KBA, regardless of the request, due to "numerous ethical problems" it perceived.

■ We cannot agree that the trial court's comments evince a prejudice towards Bonar. When viewed in its totality, it is clear that Bonar received a fair trial.

Further, this argument is unpreserved. Had Bonar perceived a judicial bias, the proper remedy is to immediately petition for recusal. *Taylor v. Carter*, 333 S.W.3d 437, 445–46 (Ky.App.2010). Bonar failed to do so, instead raising this particular argument for the first time on appeal.

### Conclusion

Based upon all of the foregoing, the judgment of the Boone Circuit Court is hereby affirmed.

MINTON, C.J.; ABRAMSON, SCOTT and VENTERS, JJ.; and Special Justices ROGER L. CRITTENDEN and ROBERT M. COOTS, concur. NOBLE and SCHRODER, JJ., not sitting.