**Barbara D. BONAR, Movant**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

No. 2013–SC–000335–KB.

Supreme Court of Kentucky.

Aug. 29, 2013.

### OPINION AND ORDER

Barbara D. Bonar moves this Court to issue a public reprimand for her admitted violation of Supreme Court Rule ("SCR") 3.130–1.7(b),[1] SCR 3.130–1.9(a), and SCR 3.130(8.3)(c).[2] The Kentucky Bar Association ("KBA") states no objection to the proposed discipline, which was negotiated pursuant to SCR 3.480(2).[3] Finding a public reprimand to be the appropriate discipline for her misconduct, we grant Bonar's motion. Bonar, whose KBA member number is 42213 and whose last known bar roster address is 3611 Decoursey Avenue, Covington, KY 41045, was admitted to the practice of law in the Commonwealth of Kentucky on November 1, 1984.

### File 15394

In 2002, Bonar filed an action in Kenton Circuit Court against the Roman Catholic Diocese of Covington on behalf of two former Diocese employees. The suit alleged various complaints against the Diocese, including long-term concealment of sexual abuse by diocesan priests. As media coverage of the suit increased, Bonar was retained by nearly twenty individuals to pursue sexual abuse actions against the Diocese. In early 2003, Bonar was approached by attorney Stan Chesley of Waite, Schneider, Bayless & Chesley ("WSBC") who proposed that their respec-

---

**1.** This is a reference to the rule as it was written prior to the July 15, 2009 amendments. The current equivalent of former SCR 3.130–1.7(b) is SCR 3.130–1.7(a)(2).

**2.** This is a reference to the rule as it was written prior to the July 15, 2009 amendments. The current equivalent of former SCR 3.130(8.3)(c) is SCR 3.130(8.4)(c).

**3.** SCR 3.480(2) states, in pertinent part, that: "[t]he Court may consider negotiated sanc-

tions of disciplinary investigations, complaints or charges if the parties agree. Any member who is under investigation pursuant to SCR 3.160(2) or who has a complaint or charge pending in this jurisdiction, and who desires to terminate such investigation or disciplinary proceedings at any stage of it may request Bar Counsel to consider a negotiated sanction."

tive firms "join forces" to pursue a sexual abuse class action lawsuit. Pursuant to their agreement, two of Bonar's existing clients became class representatives, and the class was certified in October of 2003. The initial class representatives, Greg Harvey and Maria Caddell, ultimately opted-out of the class action, electing instead to have Bonar proceed with their individual claims against the Diocese. Eventually, Bonar successfully negotiated settlements on behalf of Harvey and Caddell. All of this occurred while Bonar was still co-counsel in the class action suit.

Over time, Bonar expressed dissatisfaction with her role in the class action litigation and the fee arrangement. In early 2004, Bonar moved to withdraw as counsel from the class action citing a conflict of interest arising, from a change in the composition of the class.

After the parties reached a settlement in the class action suit in January of 2006, Bonar instituted an action against WSBC for attorney fees. The Special Judge appointed for the class action and fee dispute held that Bonar was not entitled to any fee, finding that she committed numerous ethical violations during the course of her involvement in the Diocese litigation.[4] The decision to deny Bonar an attorney fee was upheld by the Court of Appeals, and recently affirmed by this Court.[5]

■ On January 28, 2010, the Inquiry Commission issued a four-count charge against Bonar alleging that she violated SCR 3.130–1.7(b), which provided that "a lawyer shall not represent a client if the

representation of that client may be materially limited by the lawyer's responsibilities to another client, a third party, or by the lawyer's own interest"; SCR 3.130–1.9(a), which prohibits a lawyer who has formerly represented a client in a matter from representing another person in the same or substantially similar matter; SCR 3.130–1.16(a)(1), which provides that a lawyer shall withdraw from representing a client if the representation will result in a violation of the Rules of Professional Conduct; and SCR 3.130–1.3, which requires a lawyer to act with reasonable promptness and diligence. Bonar admits that her conduct violated SCR 3.130–1.7(b) and SCR 3.130–1.9(a), but moves this Court to dismiss Counts III (SCR 3.130–1.16(a)(1)) and IV (SCR 3.130–1.3) as redundant.

### File 16943

Bonar served as the President of the Kentucky Bar Association from July, to July, 2009. On July 24, 2008, Bonar sent letters to four members of the Ethics Committee of the KBA notifying them that their terms had ended on June 30, 2008, when in fact, those members' terms were not set to expire until 2009 and 2010. The four affected members shared, either individually or through their law firms, personal and professional connections with Chesley and/or the class action suit against the Diocese. When faced with the allegations of misconduct, Bonar asserted that the dismissals were based on her mistaken belief that the members' terms expired in June of 2008.

---

**4.** The Special Judge found that Bonar "provided evidence [of] her various conflicts" in emails to Diocese counsel, including "her continued settlement negotiations with the Diocese for three weeks between when the class certification was announced and the certification order was entered; her failure to inform her individual clients of the amount of time

required for a class action; her reference to her own ties with the Diocese; and her reference to contacts with the media, in which she portrayed the class in a negative light."

**5.** *See B. Dahlenburg Bonar, P.S.C. v. Waite, Schneider, Bayless & Chesley Co., L.P.A.,* 373 S.W.3d 419 (Ky.2012).

Given Bonar's continuing fee dispute with Chesley at the time of the members' removals, the KBA Board of Governors authorized an independent investigation into the propriety of the dismissals. The investigation revealed that Bonar made a series of false and misleading representations concerning her knowledge and actions relating to the controversial dismissals. Specifically, Bonar failed to acknowledge that she had been provided with pertinent information regarding the members' terms, titled the "President's Book," when in fact the KBA had give those materials to her as early as May, 2008. In a phone conversation with KBA Ethics Committee Chairperson on July 28, 2008, Bonar claimed that she had no list showing the members' term dates. She further misrepresented the content of conversations with KBA officers and staff members regarding the removals and other related matters. In letters and emails written in August of 2008, Bonar claimed that she was unaware of any "problem" with the dismissals until she received a letter from one of the "former" members on August 7, 2008. She continued to deny knowledge of the members' reappointments by her predecessor, despite having received that information on July 8, 2008. In mid-August, Bonar informed various KBA officers and staff that her decision to remove one of the members was based on a recommendation of a Bar Governor who claimed that the dismissed member was untrustworthy. Additionally, Bonar provided misleading information to the KBA investigator as to the character of an alleged request for information concerning the dismissed members' terms, and how and whether that request was communicated.

■ The Inquiry Commission issued a one-count charge against Bonar alleging that she violated SCR 3.130(8.3)(c), which provided that it is a violation of the Kentucky Rules of Professional Conduct to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Bonar admits that she violated SCR 3.130(8.3)(c) by engaging in the above-referenced conduct.

### Proceedings before this Court

Pursuant to SCR 3.260(1), the Inquiry Commission consolidated the charges in Files 15394 and 16943. Bonar moves this Court to impose a public reprimand for her admitted violations as set forth in Files 15394 and 16943, but to dismiss Counts III and IV of File 15394. The KBA states no objection to Bonar's motion for a public reprimand, which was negotiated pursuant to SCR 3.480(2). The parties have filed a joint motion to impose costs in the amount of $22,500.00.

■ When a disciplinary charge is issued against a member or officer of the Board of Governors, KBA policy mandates the appointment of a special deputy bar counsel to prosecute the charge. *See also* SCR 3.155. In accordance with this policy, attorney Jane Graham was appointed as special deputy bar counsel. Bonar's motion for public reprimand was reviewed and approved by the Chair of the Inquiry Commission and a Past President of the Kentucky Bar Association before submission to this Court.

■ We agree that a public reprimand is the appropriate sanction for Bonar's misconduct. This Court has previously asserted that a public, or even private, reprimand is an appropriate sanction for conflict of interest violations under the former SCR 3.130–1.7(b).[6] Although it was cer-

6. *Riley v. Kentucky Bar Association,* 349    S.W.3d 301 (Ky.2011) (attorney publicly rep-

tainly imprudent, Bonar's conflict of interest did not compromise the class's legal position, nor did it result in financial harm to the class members. *But c.f. Kentucky Bar Association v. Ballard,* 349 S.W.3d 922 (Ky.2011); *Hensley v. Kentucky Bar Association,* 222 S.W.3d 232 (Ky.2007). Furthermore, since the institution of the charges, Bonar's files have been consolidated, severed, held in abeyance, and reconsolidated, and the matter has amassed a large record. It is unlikely that additional proceedings would yield any new or pertinent information, as the record is extensive and the issues appear to have been fully briefed. *See* SCR 3.480(2). Finally, the fact that Bonar has no prior disciplinary history weighs in favor of a public reprimand. *See Chappell v. Kentucky Bar Association,* 360 S.W.3d 245 (Ky.2012); *Guilfoil v. Kentucky Bar Association,* 297 S.W.3d 571 (Ky.2009).

While Bonar's conflict of interest is arguably the most serious violation in her consolidated file, her admitted violation of former SCR 3.130–8.3(c) arising out of her conduct as KBA President is deeply troubling. When the allegations of ethical misconduct were levied against Bonar, KBA policy prohibited her from sitting on disciplinary cases. Following the KBA investigation, the Board mandated that Bonar seek consent and approval from the KBA Board of Governors or Executive Committee for any further committee appointments or removals. As Past President, Bonar was unable to review proposed consensual discipline. Moreover, her misconduct as KBA President is apparently unique. Previous disciplinary actions against Kentucky bar association officers are distinguishable from Bonar's case,[7] and there is an absence of legal authority in other jurisdictions concerning a bar president's misconduct while acting in his or her official capacity. There is no doubt that Bonar's actions and subsequent brazen misrepresentations harmed the integrity of her office and adversely affected KBA operations. A public reprimand is certainly warranted.

For the reasons stated herein, the Court finds the proposed consensual discipline to be appropriate and declines further review. SCR 3.480(2). Therefore, it is hereby ORDERED,

1. Barbara D. Bonar, KBA Member Number 42213, is publicly reprimanded for her violation of former (SCR) 3.130–1.7(b), SCR 3.130–1.9(a), and former SCR 3.130(8.3)(c);

2. In accordance with SCR 3.450, Bonar is directed to pay $22,500.00 in costs associated with these disciplinary proceedings, for which execution may issue from this Court upon finality of this Opinion and Order; and

3. Counts III and IV of the Inquiry Commission's charge are dismissed.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, KELLER, SCOTT, and VENTERS, JJ., concur.

NOBLE, J., not sitting.

---

rimanded for making sexual advances toward a client in a class action suit); *Kentucky Bar Association v. Bates,* 26 S.W.3d 788 (Ky.2000) (judge publicly reprimanded for signing an Emergency Protective Order on behalf and by petition of his own divorce client); *Bezold v. Kentucky Bar Association,* 134 S.W.3d 556 (Ky.2004) (attorney publicly reprimanded for representing a client who was employed by the attorney and involved in a romantic relationship with the attorney); *An Unnamed At-*torney v. Kentucky Bar Association,* 186 S.W.3d 741 (Ky.2006) (attorney privately reprimanded for failing fully to explain all ramifications of dual representation to clients, particularly how dual representation would affect duty of confidentiality).

7. *See Inquiry Commission v. Catron,* 141 S.W.3d 13 (Ky.2004); *Kentucky Bar Association v. Steiner,* 157 S.W.3d 209 (Ky.2005).

ENTERED: August 29, 2013.

/s/ John D. Minton, Jr.
Chief Justice