RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1292-MR

JOSEPH MATTHEW BYRDWELL                                    APPELLANT

APPEAL FROM HENRY CIRCUIT COURT
v.          HONORABLE S. MARIE HELLARD, SPECIAL JUDGE
ACTION NO. 16-CI-00111

CHANTELE BYRDWELL;
JONATHAN O. WELLS; AND JAMES
& WELLS, P.S.C. A/K/A JAMES AND
WELLS LAW OFFICE                                          APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: Joseph Byrdwell, *pro se*, appeals from orders of the

circuit court which decided all issues of a divorce action, including child custody,

property division, and an award of attorney fees. We conclude that the trial court

erred on an issue regarding child custody; therefore, we affirm in part, reverse in part, and remand for further proceedings in relation to custody of the children.

## FACTS AND PROCEDURAL HISTORY

Appellant and Chantele Byrdwell were married on May 17, 2008. Two children were born of the marriage. During the marriage, Appellant worked at LGE/KU Energy and Appellee was a stay at home mother. During the divorce proceedings, Appellee became a student who was working toward a degree to become a dental hygienist. The parties separated on July 27, 2015, and Appellee filed a petition for dissolution of marriage on June 9, 2016. A four-day hearing deciding all issues was held in 2018. On January 30, 2020, the trial court entered findings of fact and conclusions of law which decided all issues surrounding the divorce. Additional facts will be discussed as they become relevant to our analysis.

## ANALYSIS

Appellant's first argument on appeal is that Henry Family Court Judge, Doreen Goodwin, who presided over the divorce action, erred in not recusing herself. In May of 2016, Appellee was granted a domestic violence order against Appellant. On May 8, 2018, Appellee filed a motion to extend the DVO. The motion was heard by Judge Goodwin. There was no hearing and Appellant was not served with the motion to extend. Judge Goodwin ultimately extended the

DVO. Appellant appealed the DVO to a panel of this Court, which held that it should be vacated because Appellant was not given notice of the motion and had no opportunity to be heard by the trial court. *See Byrdwell v. Byrdwell*, Nos. 2018-CA-000628-ME and 2018-CA-001150-ME, 2019 WL 2896511 (Ky. App. Jul. 5, 2019).

On February 10, 2020, which was after the entry of the trial court's findings of fact and conclusions of law, Appellant filed a motion for a new trial. This motion also argued that Judge Goodwin should have recused herself after ruling on an *ex parte* motion filed by Appellee in the DVO action. In other words, Appellant argues that since Judge Goodwin was given *ex parte* information that could be relevant to the divorce proceedings, she should have recused herself and any orders entered after May 8, 2018, the date the DVO extension motion was filed, should be vacated.[1]

Appellant cites to *Ice v. Commonwealth*, 667 S.W.2d 671 (Ky. 1984), to support his argument. In *Ice*, Justice Leibson, in his concurring opinion, stated that no lawyer or party should have *ex parte* discussions with a presiding judge and when such a conversation occurs, prejudice should be presumed and the judge

---

[1] We note that Judge Goodwin did recuse herself after Appellant's February 10, 2020 motion. Judge Goodwin did not recuse herself based on the arguments set forth in the motion, but because Appellant filed a federal action against her and filed a complaint against her with the Judicial Conduct Commission.

should recuse himself or herself. *Id.* at 681 (Leibson, J., concurring). *Ice* also discusses Kentucky Revised Statute (KRS) 26A.015(2)(a) which states that a judge should recuse if he or she has "personal knowledge of disputed evidentiary facts concerning the proceedings[.]"

We find that issue was not timely brought to the trial court's attention; therefore, it was waived. A party "in possession of facts which he believes should disqualify the judge, must make known these facts at the outset and not wait until the judge has made a ruling against him before moving for disqualification." *Harrell v. City of Middlesboro*, 287 S.W.2d 614, 615 (Ky. 1956). Here, Appellant knew of the alleged *ex parte* communication in 2018, but waited almost two years before he moved to disqualify Judge Goodwin on those grounds.[2] In addition, this Court's opinion vacating the renewed DVO was rendered in July of 2019, but Appellant waited around seven months before raising the *ex parte* communication issue. Finally, the *ex parte* issue was not raised until after the trial court entered its findings of fact and conclusions of law. Based on the above reasons, and pursuant to *Harrell*, this motion to recuse was not timely.

*Arguendo*, we note that even if this issue were properly preserved, we would still be unable to rule on the merits. This Court has reviewed the record in

---

[2] During the course of the trial court proceedings, Appellant moved multiple times for Judge Goodwin's recusal; however, he did not raise the *ex parte* communication issue until February of 2020.

this case and could not find the 2018 motion to renew the DVO or, for that matter, the original DVO from 2016. Without being able to review the DVO renewal motion, we would be unable to determine if this *ex parte* communication contained disputed evidentiary facts regarding the divorce proceedings which would have necessitated recusal. Appellant is responsible for ensuring a complete record before this Court. *Gambrel v. Gambrel*, 501 S.W.3d 900, 902 (Ky. App. 2016).

Appellant's second argument on appeal is that the trial court erred in granting Appellee attorney fees. Specifically, Appellant claims the trial court relied on his gross income when it should have relied on his net income. Appellant claims this was error. During the proceedings in this case, Appellee moved for Appellant to pay some of her attorney fees. A hearing was held on the matter where evidence was produced showing the parties' incomes and monthly expenses. On March 30, 2018, the trial court ordered Appellant to advance Appellee $10,000 for attorney fees. The trial court found that Appellant earned approximately $9,542.95 a month and had additional income from a side business, and the court found that Appellee's only income was $1,413 per month in child support. The trial court ultimately held that, based on the parties' financial resources, Appellant should pay some of Appellee's attorney fees. In its January 30, 2020 findings of fact and conclusions of law, the trial court awarded additional attorney fees.

KRS 403.220 states:

-5-

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The award of attorney fees is reviewed for abuse of discretion. *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018).

We conclude that the trial court did not abuse its discretion by awarding Appellee attorney fees. The trial court considered the evidence produced during a hearing on the issue and held that Appellant was fully employed and earned over $100,000 a year. The court also took into consideration the fact that Appellee was a student whose only income was from child support. We agree with the trial court that this constitutes a disparity in financial resources. While it may have been prudent for the trial court to consider Appellant's net income as opposed to his gross income, there is such a disparity in the income of Appellant and Appellee that any error would be harmless.

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with

> substantial justice. The court at every stage of the
> proceeding must disregard any error or defect in the
> proceeding which does not affect the substantial rights of
> the parties.

Kentucky Rules of Civil Procedure (CR) 61.01. Here, had the trial court utilized

Appellant's net income, we are confident the court would have still awarded

Appellee substantial attorney fees due to the large disparity in the parties' incomes.

Appellant's third argument on appeal is that the trial court erred by

conditioning future discovery on Appellant paying the $10,000 in attorney fees.

Appellant did not timely pay the $10,000 in attorney fees. The trial court ordered

that Appellant was prohibited in moving forward with additional discovery until

the $10,000 was paid. This prohibition included Appellant being unable to depose

some expert witnesses he had retained. Appellant was also prohibited from

deposing a custodial evaluator appointed by the trial court, Dr. Kathryn Berla.

Even after the discovery restrictions, Appellant continued to fail to pay the attorney

fees. Ultimately, he was unable to depose or call any expert witnesses to testify.[3]

CR 26.03(1) states in pertinent part:

> Upon motion by a party or by the person from whom
> discovery is sought, and for good cause shown, the court
> in which the action is pending or alternatively, on matters
> relating to a deposition, the court in the judicial district
> where the deposition is to be taken may make any order
> which justice requires to protect a party or person from
> annoyance, embarrassment, oppression, or undue burden

---

[3] Appellant did not pay the $10,000 attorney fees until after the trial in this case.

or expense, including one or more of the following:  (a) that the discovery not be had; (b) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (c) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery[.]

"A trial court's orders with respect to discovery are reviewed for an abuse of discretion." *B. Dahlenburg Bonar, P.S.C. v. Waite, Schneider, Bayless & Chesley Co., L.P.A.*, 373 S.W.3d 419, 424 (Ky. 2012) (citation omitted).

We find no abuse of discretion in the court's limiting Appellant's ability to conduct discovery until he paid the $10,000 in attorney fees.  Appellant's income greatly exceeded Appellee's and he was ordered to pay some of Appellee's attorney fees.  At the time Appellant was ordered to pay attorney fees, he was acting *pro se* and not incurring such fees himself.  Appellee's attorney fees would increase with every deposition scheduled by Appellant; therefore, she needed the $10,000 to continue with the discovery process.  The trial court felt that limiting Appellant's discovery was the best way to ensure his compliance with the attorney fee order and we find no error with this assessment.  *See Mickler v. Mickler*, Nos. 2007-CA-002329-MR and 2008-CA-000232-MR, 2009 WL 1097966 (Ky. App. Apr. 24, 2009).

Appellant's fourth argument on appeal is that the trial court erred in not allowing him to depose or cross-examine Dr. Berla.  Dr. Berla was appointed by the trial court to conduct a custodial evaluation of Appellant, Appellee, and the

children. Dr. Berla submitted two reports to the court containing her findings. The trial court heavily relied on Dr. Berla's reports in deciding custody issues. Due to the trial court's limiting of Appellant's ability to conduct discovery, Appellant did not depose Dr. Berla and he argues the court erred in denying him the opportunity to depose or cross-examine Dr. Berla.[4] Discovery and evidentiary issues are reviewed for an abuse of discretion. *B. Dahlenburg Bonar, P.S.C.*, *supra*; *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

As it relates to investigators appointed by the trial court, KRS 403.300(3) states:

> The clerk shall mail the investigator's report to counsel and to any party not represented by counsel at least 10 days prior to the hearing. The investigator shall make available to counsel and to any party not represented by counsel the investigator's file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (2), and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator and any person whom he has consulted for cross-examination. A party may not waive his right of cross-examination prior to the hearing.

The question we must ask ourselves is, should Appellant have been allowed to depose Dr. Berla even though he did not pay the attorney fees and his

---

[4] During a hearing on July 18, 2018, the trial court stated that the deposition of Dr. Berla would be used as her trial testimony. It is unclear from the record if Appellant was able to call Dr. Berla to testify live during the divorce trial.

ability to conduct discovery was limited? As previously stated, we believe it was appropriate for the trial court to limit Appellant's discovery due to his failure to pay the attorney fees. On the other hand, KRS 403.300(3) states that a party may cross-examine the evaluator and cannot waive that ability prior to the child custody hearing. Case law also indicates that the ability to cross-examine an evaluator, such as Dr. Berla, is mandatory as it concerns issues of due process. *Morgan v. Getter*, 441 S.W.3d 94, 112 (Ky. 2014); *Thompson v. Thompson*, Nos. 2017-CA-001285-ME, 2017-CA-001286-ME, and 2017-CA-001288-ME, 2018 WL 6016662, at *14 (Ky. App. Nov. 16, 2018).

Based on the above statutory and case law, we conclude that it was error for the trial court not to allow Appellant to depose Dr. Berla. Dr. Berla was appointed by the trial court and the court relied heavily on her reports when determining the child custody issues in this case. "[I]n domestic custody proceedings, the parties' right to due process includes the right to cross-examine the authors . . . of evidentiary reports upon which the fact finder is entitled to rely." *Morgan*, 441 S.W.3d at 12. Appellant was entitled to depose her and question her about her report. Not allowing such violated his due process rights and KRS 403.300(3); therefore, we reverse and remand the trial court's decision regarding child custody. On remand, Appellant shall be allowed to depose Dr. Berla and the trial court will then make a new determination as to child custody.

Appellant's fifth argument on appeal is that the trial court erred in denying him the opportunity to depose Appellee's psychiatrist, Dr. Tammy Pennington. Appellant was permitted to depose Dr. Pennington, but only after he paid the required attorney fees, as discussed *supra*. Appellant argues that he should have been given the unfettered ability to depose Dr. Pennington because the trial court is supposed to examine the parties' mental and physical health when determining custody. KRS 403.270(2)(f).

As this is an evidentiary and discovery issue, we review for abuse of discretion. We conclude that the trial court did not err on this issue. While Appellant is correct that Appellee's mental health is relevant to child custody issues, KRS 403.270(2)(f), and *Atwood v. Atwood*, 550 S.W.2d 465, 467 (Ky. 1976), the trial court properly limited his ability to depose Dr. Pennington until after he paid the required attorney fees to Appellee. This issue is distinguishable from the deposition of Dr. Berla because statutory and case law mandates that a party be allowed to depose or question a custodial evaluator. There is no such statute or case law requiring the deposition of a psychiatrist. In addition, we must note that Appellee's medical records from Dr. Pennington were entered into evidence in this case; therefore, the court was made aware of any psychological issues Appellee may have.

Appellant's sixth argument on appeal is that the trial court's findings regarding Appellee's mental health were clearly erroneous. In its January 30, 2020 findings of fact and conclusions of law, the trial court found that Appellee's "mental and physical health are generally well however, she does have passive and dependent personality traits per Dr. Berla." In an order dated October 6, 2020, the trial court overruled Appellant's post-trial motion for sole custody and stated "[t]here is nothing in the record to suggest that the [Appellee] has any untreated mental health condition, and the [Appellant] has given no evidence in that regard." Appellant argues that the report of Dr. Berla and Appellee's certified medical records show Appellee does have mental health problems.

> The Court of Appeals . . . [is] entitled to set aside the trial court's findings only if those findings are clearly erroneous. And, the dispositive question that we must answer, therefore, is whether the trial court's findings of fact are clearly erroneous, i.e., whether or not those findings are supported by substantial evidence. "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its]

-12-

reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003) (footnotes and citations omitted).

We do not believe the trial court erred in its findings regarding Appellee's mental health. The trial court had Dr. Berla's reports and Appellee's medical records. The court was on notice that Appellee had treated with psychiatric medical professionals in the past and Appellee discussed these issues during her testimony in the divorce trial. Appellee also testified that she was on psychiatric medication for anxiety and was currently seeing a therapist. The trial court's findings regarding Appellee's mental health were supported by substantial evidence in the record and were not clearly erroneous.

Appellant's seventh argument on appeal is that the trial court erred in its findings regarding Appellant's mental health. Appellant takes issue with the trial court stating in its January 30, 2020 findings of fact and conclusions of law that Appellant shopped for a doctor who would prescribe him ADHD medication and then abused said medication, that Appellant had a preoccupation with a smell in the marital home, that Dr. Berla believed Appellant had an obsessive-compulsive personality, and that Appellant was unable to "operate in a rational and reasonable manner and free from disdain and paranoia toward the Appellee[.]"

-13-

Appellant argues that all of these findings of fact are contrary to the evidence in the record.

We find no error on this issue. As for the ADHD statements, the trial court was simply reciting Appellee's testimony at trial as to what she believed was going on. The trial court did not make a finding that it believed Appellant was abusing ADHD medication or that he shopped around for a doctor who would prescribe him the medication. As for Appellant's preoccupation with a smell in the marital home, the evidence in the record indicates that Appellant was the only person who could smell the odor, that Appellant tore holes in the walls looking for the smell, and that he disassembled the HVAC system and washing machine looking for the smell. This was supported by multiple testifying witnesses and such a finding was not clearly erroneous. As for Dr. Berla believing Appellant had an obsessive-compulsive personality, again, this is simply the trial court reciting the evidence presented to it. The court was only discussing the contents of Dr. Berla's report and did not find that Appellant had such a personality. Finally, as to the court stating that Appellant's behavior toward Appellee was unreasonable, this was a very contentious divorce case with little compromise. Appellee also testified about how she believed Appellant's behavior toward her and the children was unreasonable and how Appellant would try to control every minutia of their lives. Appellee's testimony on this issue supports the trial court's finding.

Appellant's eighth issue on appeal is that the trial court's custody and visitation decisions are an abuse of discretion. As we are reversing and remanding for additional proceedings regarding the child custody and visitation issues, this argument is moot and it will be considered anew on remand.

Appellant's ninth argument on appeal is that the trial court must reconsider its custody award because it awarded him the marital home, but did not award him primary custody. Appellant cites to KRS 403.190(1)(d) which states:

> (1) In a proceeding for dissolution of the marriage or for legal separation . . . the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
>  . . . .
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

Appellant argues that since the general assembly codified the desirability to award the marital home to the parent having primary custody, the trial court erred in awarding him the marital home and not awarding him custody. Again, as we are remanding for additional custody proceedings, this issue is moot.

Appellant's tenth argument on appeal is that the trial court erred in rejecting his claims of nonmarital interest in the marital home. Appellant claims

that he provided sufficient proof that he used nonmarital funds to help purchase the marital home. He also argues that the increase in the equity of the marital home post separation should be granted solely to him.

> When property distribution is at issue in a dissolution proceeding, the trial court must undertake three steps: (1) the trial court must categorize each piece of disputed property as marital or nonmarital; (2) the trial court must assign each party's nonmarital property to that party; (3) the trial court must equitably divide the parties' marital property in just proportions. *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006).
>
> "[A] trial court has wide discretion in dividing marital property; and we may not disturb the trial court's rulings on property-division issues unless the trial court has abused its discretion." *Id.* at 6 (citing *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky. 1989)). "The question of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed de novo." *Id.* (citations omitted). Marital property is defined in KRS 403.190(2) as "all property acquired by either spouse subsequent to the marriage[.]"

*Roper v. Roper*, 594 S.W.3d 211, 225-26 (Ky. App. 2019), *as modified* (Jan. 17, 2020) (footnote omitted).

> "Tracing" is defined as "[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." In the context of tracing nonmarital property, "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." The

-16-

concept of tracing is judicially created and arises from KRS 403.190(3)'s presumption that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.

*Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) (footnotes and citations omitted).

Appellant purchased a condominium in 2006. The parties were married in 2008 and they lived together in the condominium until it was sold in 2013. They received $5,471.35 in proceeds after selling the condominium. When addressing the nonmarital interest in the marital home, the trial court stated:

At the time of the separation, the parties were living at 101 Penn Court, Smithfield, Kentucky, 40068. The home was purchased during the marriage and has a substantial mortgage. The parties agreed, pursuant to their Verified Disclosures, the value of the home is $235,000.00. The original loan was for $224,070.00. $205,158.63 is owed on the house, leaving $29,841.37, in equity. The [Appellant] claimed a non-marital share stemming from a condominium he owned prior to the marriage. However, he failed in his burden of proof as he failed to establish the purchase price of the parties' prior home or sufficiently trace that home['s] proceeds into the marital home. Mr. Byrdwell purchased a condo in Prospect on or about September 8, 2006, before the marriage. The loan for the Prospect condo was for $112,500.00. The Court was not provided with any deeds to determine the purchase price which he stated to be $112,500.00. The parties married on May 17, 2008, less than two years after its purchase. Five years after the marriage the property sold on April 16, 2013[,] for

$119,000.00. The parties received $5,471.35 in cash at the closing. They then purchased Penn Court in Smithfield, Kentucky for $231,000.00, with a loan of $224,000.00 on the same date, April 16, 2013. However, the Court was not provided the loan balance on the date of marriage or other documentary proof and is unable to ascertain how much was paid on the mortgage before or after the marriage on the Prospect condo.

As the home was bought and financed during the marriage and the [Appellant] failed to provide sufficient proof of a nonmarital interest, the equity is deemed marital.

We believe that the trial court did not err in failing to award Appellant a nonmarital interest in the marital home. Since the condominium was purchased prior to the marriage, it is likely that Appellant did have some nonmarital interest in it; however, Appellant's evidence was insufficient to determine the amount of his nonmarital interest. The mortgage for the condominium was paid with marital funds for around five years. It is clear that the proceeds of the sale of the condominium went toward the purchase of the marital home, but it is unclear how much of those proceeds are nonmarital. Had Appellant provided proof of how much of the condominium's mortgage he had paid prior to the marriage, his argument might be more persuasive. We agree with the trial court that Appellant failed to meet his burden in proving his nonmarital interest in the marital home.

Appellant also claims that he should be awarded a nonmarital interest in the money he expended in paying the mortgage after a limited decree of

dissolution was entered. On July 19, 2019, the trial court entered a limited decree of dissolution which dissolved the parties' marriage, but reserved all issues regarding the division of marital property, child custody, and child support. Appellant argues that all money he expended to pay for the marital residence's mortgage should be his nonmarital property.

This is a novel argument, and one which would seem to be supported by the case of *Culver v. Culver*, 572 S.W.2d 617, 620 (Ky. App. 1978); however, Appellant does not cite to the record if he introduced evidence showing how much he paid toward the mortgage after the limited decree of dissolution. Without this evidence, we cannot conclude that the trial court erred. It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court. *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940).

Appellant's eleventh argument on appeal is that the trial court erred when it ordered Appellant to allow Appellee unsupervised access to the marital home to retrieve certain personal property. Appellant claims that if Appellee is allowed unfettered access to the marital home that she will steal his personal belongings. He also argues that there was no evidence that the personal property being sought by Appellee was still in the marital residence. We find no error in the court's order. The trial court awarded Appellee certain items of personal property

and she is entitled to them without the interference of Appellant. If Appellee steals personal property from Appellant while inside the marital residence, that is an issue for the police.

Appellant's twelfth argument on appeal is that the trial court erred in its imputation of income for Appellee. For the purposes of calculating child support, the trial court imputed minimum wage to Appellee. Appellant argues that the trial court should impute additional income to Appellee because prior to marriage, she worked as a dental assistant. He claims her imputed income should resemble that of a dental assistant and not minimum wage.

"As are most other aspects of domestic relations law, the establishment, modification, and enforcement of child support are prescribed in their general contours by statute and are largely left, within the statutory parameters, to the sound discretion of the trial court. This discretion is far from unlimited." *Van Meter v. Smith*, 14 S.W.3d 569, 572 (Ky. App. 2000) (citations omitted).

In order to set child support, a trial court must determine the incomes of the parties. At the relevant time herein, KRS 403.212(2) stated in relevant part:

> (a) "Income" means actual gross income of the parent if employed to full capacity or potential income if unemployed or underemployed;
>
> . . . .

(d) If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a determination of potential income shall not be made for a parent who is incarcerated, physically or mentally incapacitated, or is caring for a very young child, age three (3) or younger, for whom the parents owe a joint legal responsibility. Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community. A court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation.

We find no error in the trial court only imputing a minimum wage income to Appellee. While Appellee had been a dental assistant prior to the marriage, she was a stay at home mother for the entirety of the marriage. After the separation, Appellee went back to school and was not earning any income as a student. We believe that based on Appellee's lack of recent work history and lack of employment qualifications, the trial court did not abuse its discretion in the imputation of minimum wage income.

Appellant's thirteenth argument on appeal is that the trial court's assignment of marital debts was an abuse of discretion. At the time the parties filed their preliminary verified disclosure of assets, the parties had unsecured debts of $51,388.71. By the time of the divorce trial, these debts had ballooned to $139,647.07. These additional debts were taken out in Appellant's name only.

The trial court ordered that Appellant pay the debts solely in his name because they were incurred after the separation of the parties and for his sole benefit. Appellant claims that because these debts were incurred prior to the final decree of dissolution, they should be considered marital debts and Appellee should be assigned a portion.

> As with division of marital property, the trial court's decisions regarding division of marital debt is reviewed for abuse of discretion. Furthermore, there is no presumption that debts incurred during the marriage are marital. Rather, the party claiming that a debt is marital has the burden of proof. In making this determination, the trial court should consider receipt of benefits, the extent of participation, whether the debt was incurred to purchase assets designated as marital property, whether the debt was necessary to provide for the maintenance and support of the family, and any economic circumstances bearing on the parties' respective abilities to assume the indebtedness.

*Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014) (citations omitted).

We agree with the trial court regarding the allocation of debts. Evidence in the record indicates that some of the additional debts were incurred by Appellant to pay for his legal fees. Additionally, after the separation, Appellant took the Cisco Certified Internetwork Expert (CCIE) exam multiple times. Some of the new debts were incurred to pay for study materials for the exam and to help pay the fees and other costs associated with taking the exam. The trial court found

that these new debts were incurred for Appellant's sole benefit; therefore, he should be responsible for them. We agree and find no abuse of discretion.

Appellant's fourteenth argument on appeal is that the trial court erred in finding that he dissipated marital assets. On June 27, 2016, the trial court entered a status quo order which stated that the parties should not sell or otherwise dispose of property, cash, or other assets in their possession without an order of the court or an agreed order signed by both parties. After the entry of the status quo order, Appellant liquidated one retirement account and reduced the amount contained in another. Appellant did not receive permission from the court or Appellee to do so. In the January 30, 2020 findings of fact and conclusions of law, the trial court held that these retirement accounts were marital property and that Appellant violated the status quo order by reducing the amount contained in them. The court held Appellee was entitled to an amount of money equal to half the funds in the accounts prior to their reductions. Appellant claims this conclusion by the trial court was in error because there was no proof he intended to deny Appellee her share of marital assets and that these reductions were necessary to pay for litigation fees and costs of living.

While Appellant may claim that he used these retirement funds for litigation fees and to pay for living expenses, he does not cite to the record the

location of the evidence supporting his claim. We do not know if he had receipts showing where these funds went or if he discussed it in his testimony.

> Without pinpoint citations to the record, a court "must sift through a record to [find] the basis for a claim for relief." Expeditious relief would cease to exist without this requirement. "It is well-settled that an appellate court will not sift through a voluminous record to try to ascertain facts when a party has failed to comply with its obligation under [our rules of procedure] . . . to provide specific references to the record."

*Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019) (footnotes and citations omitted). Due to the failure to cite to the evidence in the record that supports his argument, we find no error.

Appellant's final argument on appeal is that he is entitled to an evidentiary hearing on two motions for sole custody he made after the entry of the January 30, 2020 findings of fact and conclusions of law. Seeing as we are reversing and remanding the child custody issue, this argument is moot.

## **CONCLUSION**

Based on the foregoing, we affirm in part, reverse in part, and remand. We reverse only the determination of child custody because Appellant was not allowed to depose Dr. Berla and this was in violation of statutory and case law. Seeing as the trial court heavily relied on Dr. Berla's reports in deciding the child custody issue, we must reverse the child custody issue. On remand, the trial court shall allow Appellant to depose Dr. Berla. Then, the trial court will take into

consideration the evidence produced by her testimony and decide the child custody issue anew.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Joseph Matthew Byrdwell, *pro se*
Eminence, Kentucky

BRIEF FOR APPELLEE:

Jonathan O. Wells
LaGrange, Kentucky

Benjamin Francis Wyman
Carrollton, Kentucky